# UNITED STATES *v.* LORENZETTI

No. 83–838.   Argued April 23, 1984—Decided May 29, 1984

*Carolyn F. Corwin* argued the cause for the United States. With her on the briefs were *Solicitor General Lee, Acting Assistant Attorney General Willard, Deputy Solicitor General Geller, William Kanter,* and *Freddi Lipstein.*

*Charles Sovel* argued the cause and filed a brief for respondent.

JUSTICE BLACKMUN delivered the opinion of the Court.

The Federal Employees' Compensation Act (FECA), 5 U. S. C. § 8101 *et seq.,* provides a comprehensive system of compensation for federal employees who sustain work-related injuries. As part of that system, an employee who receives FECA payments is required to reimburse the United States for those payments, to a specified extent, when he obtains a damages award or settlement from a third party who is liable to the employee for his injuries. § 8132. The question presented by this case is whether the United States may recover FECA payments for medical expenses and lost wages from an employee whose third-party tort recovery compensates him solely for noneconomic losses like pain and suffering.

## I

The facts are clear. Respondent Paul B. Lorenzetti is a special agent for the Federal Bureau of Investigation. On November 21, 1977, he was injured in an automobile accident in Philadelphia while on official business. Federal employees who are injured while engaged in the performance of their official duties are entitled under FECA to compensation for medical expenses, lost wages, and vocational rehabilitation. See §§ 8102–8107. Respondent's injuries were not serious enough to require vocational rehabilitation, but he eventually received, from the Federal Employees' Compensation Fund, the sum of $1,970.81 for his medical expenses and lost wages. See § 8147. Because the United States' liability for work-related injuries under FECA is exclusive, see § 8116(c), respondent cannot recover from the United States for losses such as pain and suffering that are not compensated under FECA.

Respondent subsequently instituted a tort action in a Pennsylvania state court against the driver of the other automobile. Respondent's action was subject to the terms of the Pennsylvania No-fault Motor Vehicle Insurance Act (No-fault Act), Pa. Stat. Ann., Tit. 40, § 1009.101 *et seq.* (Purdon Supp. 1984–1985), which substantially alters conventional tort liability for automobile accidents. Under the No-fault Act, an accident victim must look to his own insurance carrier to cover basic economic losses, including an unlimited amount of medical expenses and up to $15,000 in lost wages. §§ 1009.104, 1009.106, 1009.202. The victim may maintain a tort action against the driver of the other automobile, but his recovery is generally limited to noneconomic losses like pain and suffering; he may recover damages for economic losses only to the extent that they are not otherwise compensated because they exceed statutory limits (such as the $15,000 lost-wage ceiling) under the No-fault Act. §§ 1009.301(a)(4) and (a)(5). In this case, respondent's medical expenses and

lost wages had been compensated fully by the Federal Government under FECA. As a result, the driver of the other vehicle moved to exclude evidence of medical expenses and lost wages from the trial. The trial court did not rule formally on that motion but indicated its agreement that respondent was confined to recovering damages for non-economic losses. Respondent eventually settled the case for $8,500, a figure that represented compensation for non-economic losses alone.

The United States thereafter sought to be reimbursed for its FECA payments out of respondent's tort settlement.[1] FECA contains several provisions designed to shift the compensation burden from the United States to any third party who is independently liable for the employee's injuries. Under § 8131, if an accident for which the United States is liable under FECA also creates a legal liability in a person other than the United States to pay damages, the Secretary of Labor may require the employee either to prosecute an action in his own name against the third party or to assign to the United States his right of action to enforce the liability. When an employee maintains an action in his own name, the United States is entitled to be reimbursed for its FECA payments in accordance with § 8132. This statute in relevant part reads:

> "If an injury or death for which compensation is payable under [FECA] is caused under circumstances creating a legal liability in a person other than the United States to pay damages, and a beneficiary entitled to compensation from the United States for that injury or death receives money or other property in satisfaction of that liability as the result of suit or settlement by him or in his behalf, the beneficiary, after deducting therefrom the costs of

---

[1] After deducting the Government's share of a reasonable attorney's fee, see 5 U. S. C. § 8132, the United States arrived at a reimbursement figure of $1,620.24. This roughly represents one-fifth of the sum received by respondent in the settlement of his third-party action.

suit and a reasonable attorney's fee, shall refund to the United States the amount of compensation paid by the United States and credit any surplus on future payments of compensation payable to him for the same injury."[2]

The United States asserted that it was entitled to reimbursement for its FECA payments in this case pursuant to § 8132.

Respondent declined to pay over the requested sum and, instead, commenced a declaratory judgment action in the United States District Court for the Eastern District of Pennsylvania. He sought a declaration that the United States' right of reimbursement under § 8132 was confined to recovery out of damages awards or settlements for economic losses of the sort covered by FECA, and that an award or settlement confined to noneconomic losses like pain and suffering was immune from recovery under § 8132. In opposition, the United States took the position that § 8132 created a general right of reimbursement not conditioned on the nature of the loss for which an employee received payment in his tort action.

The District Court granted summary judgment to the United States. 550 F. Supp. 997 (1982). The District Court relied principally on *Ostrowski* v. *United States Dept. of Labor, Office of Workers Compensation Programs*, 653 F. 2d 229 (CA6 1981), aff'g *Ostrowski* v. *Roman Catholic Archdiocese of Detroit*, 479 F. Supp. 200 (ED Mich. 1979), in which the Court of Appeals for the Sixth Circuit had been presented with the identical question by virtue of a similar Mich-

---

[2] Section 8132 further provides that no person shall make distribution to an employee pursuant to a damages judgment or settlement without first satisfying the United States' reimbursement interest. The federal right of reimbursement under § 8132 is subject to one significant limitation: regardless of the extent of his FECA receipts, an employee is entitled to retain one-fifth of the net amount of the recovery after the expenses of the suit have been deducted. The same protection is available under § 8131(c) when the Secretary of Labor prosecutes an assigned right of action on behalf of the United States.

igan no-fault statute and had resolved the issue in favor of the Government. Like the courts in *Ostrowski*, the District Court here looked to the language of § 8132 itself. It observed: "'There is no language in Section 8132 delineating two classes of damages—one of which gives rise to a duty to reimburse and one of which does not.'" 550 F. Supp., at 999, quoting *Ostrowski*, 479 F. Supp., at 203. Instead, the duty to reimburse encompassed all damages recovered from third parties. The District Court found further support for its reading of § 8132 both in the regulations promulgated by the Secretary of Labor under § 8132 and in the legislative history, which indicated that Congress had been aware of the possibility of third-party tort recoveries for noneconomic harms yet had taken no action to confine the scope of the statute. 550 F. Supp., at 1000.

On appeal, the United States Court of Appeals for the Third Circuit reversed. 710 F. 2d 982 (1983). Unlike the District Court, the Court of Appeals made only passing references to the language of § 8132. It reasoned that, because § 8132 was enacted prior to the advent of no-fault statutes, "Congress could not have anticipated this scenario" and the statute "does not speak to this situation." *Id.*, at 985. The Court of Appeals addressed itself instead to what it deemed to be the underlying purposes of § 8132 and FECA. In the Court of Appeals' view, the purpose of § 8132 was twofold: to prevent federal employees from obtaining double recoveries and to minimize the cost of FECA to the Federal Government. *Id.*, at 984. These goals, in turn, were subject to FECA's overarching aim of treating federal employees "'in a fair and equitable manner.'" *Id.*, at 985, quoting S. Rep. No. 93–1081, p. 2 (1974).

The Court of Appeals rejected the District Court's reading of § 8132 on the ground that it would not serve the purposes of the statute and would be "manifestly unfair" to federal employees subject to no-fault statutes. 710 F. 2d, at 985. The goal of preventing double recovery does not require that the

United States be reimbursed when an employee's tort recovery under a no-fault statute is limited to noneconomic damages, since the Commonwealth's statutory scheme guarantees that the employee's recovery does not include payment for elements of loss covered by FECA. At the same time, allowing the United States to obtain reimbursement out of a tort recovery for noneconomic loss would frustrate the congressional goal of treating federal employees fairly and equitably, for the Pennsylvania workmen's compensation statute does not impose a parallel obligation on private employees to make reimbursements in the same circumstances. *Id.*, at 985–986. The Court of Appeals found nothing in the legislative history of FECA or the regulations promulgated by the Secretary of Labor under § 8132 that made it improper to read § 8132 analogously to the Commonwealth's workmen's compensation statute. *Ibid.* The Court of Appeals recognized, however, that its interpretation of § 8132 was squarely inconsistent with that of the Court of Appeals for the Sixth Circuit in *Ostrowski.* 710 F. 2d, at 984.

We granted certiorari to resolve the conflict over the scope of the United States' right of reimbursement under § 8132. 464 U. S. 1068 (1984). We now reverse.

## II

The answer to the question presented here is evident on the face of the statute, it seems to us, for § 8132 by its own terms requires respondent to reimburse the United States for the disputed sum. Section 8132 provides that whenever a federal employee suffers injury or death compensable under FECA "under circumstances creating a legal liability in a person other than the United States to pay damages," and the employee or his beneficiaries receive "money or other property in satisfaction of that liability," they "shall refund to the United States the amount of compensation paid by the United States." We find little room for confusion about the meaning of this language. Section 8132 imposes only two

conditions precedent to an employee's obligation to "refund . . . the amount of compensation paid by the United States." The first is that the employee must have suffered an injury or death under circumstances creating a legal liability in a third party to pay damages. The second is that the employee or his beneficiaries must have received money or other property in satisfaction of that liability. Here, both conditions have been met: respondent was injured in an automobile accident that gave rise to third-party liability, and he received $8,500 in satisfaction of his claim for damages. As a result, the United States is entitled to reimbursement for amounts paid to respondent for medical expenses and lost wages. Contrary to respondent's argument, § 8132 does not confine the United States to the rights of a subrogee with respect to the specific classes of expenses paid by it to injured employees under FECA; instead, it expressly creates a general right of reimbursement that obtains without regard to whether the employee's third-party recovery includes losses that are excluded from FECA coverage.[3]

---

[3] Respondent argues that § 8132 is inherently ambiguous because the term "damages" bears several readings. In particular, respondent suggests that "damages" could be read literally to encompass not only liability for death or personal injury but liability for property damages as well. Respondent argues that the provision cannot have been meant to create a right of reimbursement out of an employee's recovery for property damages, and hence that the literal language of § 8132 leads to unintended results unless it is informed with the congressional policies on which the Court of Appeals relied.

We agree that § 8132 does not include a right of reimbursement out of third-party compensation for property damages, but we disagree that the statutory reference to "damages" contains any ambiguity that must be dispelled to reach that conclusion. The term "damages" clearly refers back to the "injury or death" that gives rise to the third party's legal liability, thereby excluding reimbursement out of any property-damages recovery. Section 8132's predecessor provision was even clearer in this regard, for it stated that the United States' right of reimbursement arose "if an injury or death for which compensation is payable . . . is caused under circumstances

This reading of § 8132 is reinforced by the parallel terms of § 8131, which governs the right of the United States itself to prosecute an employee's third-party action. Section 8131(a)(1) requires an employee, at the discretion of the Secretary of Labor, to "assign to the United States *any* right of action he may have to enforce [a third-party] liability" arising from the employee's accident (emphasis added). This obligation to assign causes of action arising from accidents covered by FECA is an unqualified one; the statute does not excuse an employee whose only cause of action is for elements of loss that are not compensable under FECA. See H. R. Rep. No. 678, 64th Cong., 1st Sess., 11 (1916) (an injured employee or his beneficiary may be required to assign "*any* right of action" against a third party whose tortious conduct caused the injury (emphasis added)). In turn, the Secretary of Labor is authorized to prosecute or compromise any cause of action so assigned and to "deduct [from any recovery] and place to the credit of the Employees' Compensation Fund the amount of compensation already paid to the beneficiary," reserving for the employee or his beneficiaries not less than one-fifth of the award or settlement. § 8131(c). There is no question but that the Secretary of Labor could have required respondent to assign his cause of action against the other driver to the United States, on pain of forfeiting his FECA compensation if he refused to do so, § 8131(b), and could have maintained the action directly for the benefit of the United States. Respondent has not explained why this result is unwarranted under § 8131 or why

---

creating a legal liability in some person other than the United States to pay damages *therefor*. . . ." Act of Sept. 7, 1916, ch. 458, § 27, 39 Stat. 747–748 (emphasis added), repealed by Pub. L. 89–554, § 8(a), 80 Stat. 632, 643. The use of the term "therefor" demonstrates Congress' intent that "damages" refer back to the phrase "injury or death." "Therefor" was omitted when the original provision was replaced by § 8132 in 1966, but the omission was not meant to be a substantive change. See Pub. L. 89–554, § 7(a), 80 Stat. 631.

§ 8132 should be construed to diminish the scope of the United States' reimbursable interest when a third-party action is maintained by the employee himself.[4]

Nothing in FECA's legislative history persuades us that § 8132 means something less than what it says. FECA was enacted in 1916 as the first comprehensive injury-compensation statute for federal employees. Act of Sept. 7, 1916, ch. 458, 39 Stat. 742, repealed by Pub. L. 89–554, § 8(a), 80 Stat. 632, 643. Section 27 of the original statute vested the United States with a right of reimbursement in terms that do not differ materially from the relevant portions of § 8132 today.[5] The section was adopted "not for the purpose of increasing [FECA] compensation, but for the purpose of reimbursing the Government for payments made and indemnifying it against other amounts payable in the future." *Dahn* v. *Davis*, 258 U. S. 421, 430 (1922). At no point did Congress suggest in its deliberations that the federal right of reimbursement was to be limited to particular categories of third-party recoveries for injury or death. While no-fault automobile insurance statutes were not in existence in 1916, the possibility that third-party recoveries might encompass

---

[4] Respondent does argue that § 8131 provides nothing more than an alternative means for the United States to enforce an interest in an employee's claim for medical expenses and lost wages. The language of § 8131, however, is no more subject to this strained interpretation than is the language of § 8132.

[5] Section 27 provided:

"[I]f an injury or death for which compensation is payable under this Act is caused under circumstances creating a legal liability in some person other than the United States to pay damages therefor, and a beneficiary entitled to compensation from the United States for such injury or death receives, as a result of a suit brought by him or on his behalf, or as a result of a settlement made by him or on his behalf, any money or other property in satisfaction of the liability of such other person, such beneficiary shall, after deducting the costs of suit and a reasonable attorney's fee, apply the money or other property so received [as a refund to the United States for FECA payments already made and as a credit for unmatured FECA obligations arising from the same injury]."

compensation for pain and suffering was well known, see, *e. g.*, 53 Cong. Rec. 10909–10910 (1916) (remarks of Rep. Barkley); yet no effort was made to reduce the breadth of the statutory language to insulate such compensation from recovery by the United States. Congress subsequently provided added protection for employees under § 8132, most notably by reserving one-fifth of the net third-party recovery for the employee, see Pub. L. 89–488, § 10, 80 Stat. 255, but at no point has it acted to restrict the types of third-party recoveries from which the United States may obtain reimbursement.

Neither do we find any inconsistency between the interpretation of § 8132 rejected by the Court of Appeals and the underlying purposes of the provision. Admittedly, the goal of preventing double recoveries by injured employees does not demand that an employee in respondent's position turn over a third-party payment confined to compensation for pain and suffering. As the Court of Appeals itself recognized, however, the purpose of § 8132 is not simply to prevent double recoveries but to minimize the cost of the FECA program to the Federal Government. See *Dahn* v. *Davis*, 258 U. S., at 430; cf. H. R. Rep. No. 678, *supra*, at 13–14. It is self-evident that the latter goal is directly advanced by allowing the United States to obtain reimbursement out of any third-party recovery, regardless of whether the third-party recovery includes compensation for losses other than medical expenses and lost wages. When Congress has chosen to subordinate the goal of minimizing FECA expenditures to other concerns, as it did when it amended § 8132 to reserve one-fifth of the net third-party recovery for the employee, it has done so explicitly. We are not at liberty to fashion an additional limitation on that goal without express authorization from Congress.

The Court of Appeals believed that allowing the United States to recover in this case would be inconsistent with Congress' declared intent that federal employees "be treated in a fair and equitable manner" under FECA and that the United

States "strive to attain the position of being a model employer." S. Rep. No. 93–1081, p. 2 (1974). However useful these general statements of congressional intent may be in resolving ambiguities in the statutory scheme, they are not a license to ignore the plain meaning of a specific statutory provision. The language relied on by the Court of Appeals concerned a wide variety of amendments to FECA enacted in 1974, none of which materially altered the balance struck in § 8132 between the interests of employees and the interests of the Federal Government. In addition, as this case amply demonstrates, any unfairness or inequity arises not from the operation of § 8132 alone but from the provision's interaction with distinct state statutory schemes. Even if Congress' desire that the United States be "a model employer" were a sufficient basis for interpreting § 8132 to avoid intrinsic inequities, it hardly would be a sufficient basis for inferring that Congress meant to sacrifice the substantial federal interest in reimbursement in order to avoid extrinsic complications introduced by independent state legislative actions. Nor is it true, as the Court of Appeals seemed to believe, that interpreting § 8132 to require reimbursement here will leave federal employees systematically worse off than their counterparts in the private sector; the prevailing rule under state workmen's compensation statutes is that an employer is fully entitled to be reimbursed from third-party recoveries for pain and suffering, even when the portion of an award attributable to pain and suffering is clearly separable from the portion attributable to economic losses. See 2A A. Larson, The Law of Workmen's Compensation § 74.35, pp. 14–476 to 14–478 (1982).

The Court of Appeals also sought to justify its conclusion on the ground that Congress could not have anticipated the adoption of no-fault automobile insurance statutes and the attendant restriction on third-party tort liability for economic losses. As pointed out above, the fact that Congress could not foresee no-fault statutes does not mean that Congress did

not foresee the risk that federal reimbursement rights would trench on third-party recoveries for noneconomic losses. More important, the fact that changing state tort laws may have led to unforeseen consequences does not mean that the federal statutory scheme may be judicially expanded to take those changes into account. See *Morrison-Knudsen Construction Co.* v. *Director, Office of Workers' Compensation Programs*, 461 U. S. 624, 635–636 (1983). It is for Congress, not the courts, to revise longstanding legislation in order to accommodate the effects of changing social conditions. Congress simply has not done so here.

## III

For these reasons, we hold that § 8132 entitles the United States to be reimbursed for FECA compensation out of any damages award or settlement made in satisfaction of third-party liability for personal injury or death, regardless of whether the award or settlement is for losses other than medical expenses and lost wages. The judgment of the Court of Appeals, accordingly, is reversed.

*It is so ordered.*