**UNITED STATES of America**

v.

**Manuel W. VETTI.**

**Civ. No. H–87–773 (PCD).**

United States District Court, D. Connecticut.

March 23, 1988.

---

987

W. Philip Jones, Asst. U.S. Atty., Hartford, Conn., for plaintiff.

Sally S. King, Robinson & Cole, Hartford, Conn., for defendant.

### RULING ON MOTION FOR SUMMARY JUDGMENT

DORSEY, District Judge.

I. *Facts and Procedural History* [1]

"On August 5, 1976, while an employee of the United States Postal Service, defendant filed a claim for benefits under the Federal Employees' Compensation Act ('FECA')," Statement, ¶ 1, for hypertension, cephalalgia,[2] sleeplessness, and high blood pressure, allegedly as a result of occupation related events.

Apparently, in the early 1970s, defendant, along with a number of associates, owned several parcels of property in Stamford, Connecticut, which were offered for sale to the Postal Service. Defendant's involvement with these properties and his potential conflict of interest prompted investigations by his superiors and the United States Attorney. A subsequent indictment resulted in defendant's eventual conviction in 1979 on a charge that he participated, as a government employee, in a decision or recommendation which he knew he had a financial interest, in violation of 18 U.S.C. § 208(a). *See* Employees' Compensation Appeals Board ("ECAB") Decision and Order (3/18/82).

Defendant claimed that the investigations, the suspension of further merit increases until the investigations were concluded, and the attack on his honor and integrity caused his medical problems. *Id.*

---

1. Except where noted, the facts and procedural history of this case are not disputed and are adopted in large part from plaintiff's statement of material facts not in dispute ("Statement"), Local Rule 9(c).

2. Cephalalgia is commonly defined as a headache. Webster's Third New International Dictionary at 364 (1981).

"Compensation was awarded from September 30, 1976 through February 28, 1977 and April 1977 through February 5, 1981." Statement, ¶ 3. "On February 23, 1981 the Director of Office of Workers' Compensation Programs ("OWCP") issued an order rejecting defendant's claims." *Id.*, ¶ 4. The Director found that defendant's medical problems were not the result "of his Federal employment as a Postmaster, but related to his outside business activities." Compensation Order at 1 (2/23/81). Defendant's subsequent application for review was denied. Statement, ¶¶ 6–7.

After the OWCPL's decision, defendant was informed that he had been overpaid in the amount of $102,329.32. *Id.*, ¶ 9. Defendant sought review of both the denial of his benefits and a review of the overpayment order. *Id.*, ¶¶ 11–15. On March 18, 1982, the ECAB affirmed OWCP's decision denying defendant further benefits. *Id.*, ¶¶ 16–17. "On August 9, 1984 an OWCP hearing representative ("HR") conducted a hearing on the issues of: a. overpayment; b. amount of overpayment; c. existence of absence of fault by defendant." *Id.*, ¶ 22. The HR found that the correct amount of overpayment was $102,329.32 and that defendant was not without fault in causing the overpayment. *See* Decision of HR (1/25/85). Specifically, the HR found that defendant should have known that he was not entitled to benefits because his problems related to his "outside business association and his financial interest in certain parcels of property." *Id.* at 4. By representing that his medical problems were job related, defendant was found to have violated 5 U.S.C. § 8129(a).[3] "On July 23, 1985 OWCP moved the ECAB

to remand for a further hearing as there had been an incorrect finding as to [defendant's] fault." Statement, ¶ 26. The motion was subsequently granted. *Id.*, ¶ 28.

On remand, the HR issued a new decision on January 7, 1986, and found defendant without fault in creating the overpayment. *Id.*, ¶¶ 30–32. However, waiver of the overpayment was denied. Although defendant was found to be without fault in causing the payments, the HR concluded that recovery would not defeat the purpose of the FECA and would not be against equity and good conscience. This conclusion was based on the HR's finding that defendant had sufficient assets to afford repayment.

Defendant appealed the HR decision on April 9, 1986. On March 31, 1987, the ECAB affirmed the HR's decision denying a waiver based on defendant's estimated asset worth of $584,833.78. *See* ECAB Decision and Order (3/31/87). Several demand letters have subsequently been sent to defendant requesting overpayment. No payment has yet been made.

On October 2, 1987, plaintiff instituted this action seeking recovery from defendant of the $102,329.32 in FECA overpayments made to him, plus interest to date of judgment. Defendant denies plaintiff's entitlement to repayment on the basis that the procedures "followed by the U.S. Department of Labor, Office of Workers' Compensation Programs in purporting to determine and assess the amount of alleged overpayment to defendant violated the due process rights guaranteed to the defendant by the Fifth Amendment to the U.S. Constitution." Defendant's Answer

---

**3.** Section 8129 provides:

(a) When an overpayment has been made to an individual under this subchapter because of an error of fact or law, adjustment shall be made under regulations prescribed by the Secretary of Labor by decreasing later payments to which the individual is entitled. If the individual dies before the adjustment is completed, adjustment shall be made by decreasing later benefits payable under this subchapter with respect to the individual's death.

(b) Adjustment or recovery by the United States may not be made when incorrect payment has been made to an individual who is

without fault and when adjustment or recovery would defeat the purpose of this subchapter or would be against equity and good conscience.

(c) A certifying or disbursing official is not liable for an amount certified or paid by him when—

(1) adjustment or recovery of the amount is waived under subsection (b) of this section; or

(2) adjustment under subsection (a) of this section is not completed before the death of all individuals against whose benefits deductions are authorized.

at 1. Plaintiff has moved for summary judgment. For the reasons set forth herein, the motion is denied in part and granted in part.

## II. *Discussion*

### A. Summary Judgment

... Fed.R.Civ.P. 56(c) provides, in part, that summary judgment shall be rendered only when a review of the entire record demonstrates "that there is no genuine issue as to any material fact." The burden falls on the moving party to establish that no relevant facts are in dispute. *Heyman v. Commerce & Indus. Ins. Co.*, 524 F.2d 1317, 1319–20 (2d Cir.1975); accord *Addickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 [90 S.Ct. 1598, 1608, 26 L.Ed.2d 142] (1970). Moreover, in determining whether a genuine issue has been raised, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 [82 S.Ct. 993, 994, 8 L.Ed.2d 176] (1962) (per curiam); *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir.1980).

Properly employed, summary judgment allows the court to dispose of meritless claims before becoming entrenched in a frivolous and costly trial. *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9 (2d Cir.1986), *cert. denied*, [— U.S. —], 107 S.Ct. 1570 [94 L.Ed.2d 762] (1987). It must, however, be used selectively to avoid trial by affidavit. *Judge v. Buffalo*, 524 F.2d 1321 (2d Cir.1975). Hence, the fundamental maxim remains that on a motion for summary judgment a court "cannot try issues of fact; it can only determine whether there are issues to be tried." *Heyman*, 524 F.2d at 1319–20. As long as the plaintiff has adduced sufficient facts to substantiate the elements of his claim, summary judgment is inappropriate. *Celotex Corp. v. Catrett*, [477 U.S. 317] 106 S.Ct. 2548, 2554 [91 L.Ed. 2d 265] (1986).

*Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 57–58 (2d Cir.1987).

### B. Plaintiff's Argument

Relying principally on 5 U.S.C. § 8128(b), plaintiff contends that the decision of March 31, 1987, is final and unreviewable. Section 8128(b) provides, in relevant part:

The action of the Secretary or his designee in allowing or denying a payment under this subchapter is—

(1) final and conclusive for all purposes and with respect to all questions of law and fact; and

(2) not subject to review by another official of the United States or by a court by mandamus or otherwise.

Under plaintiff's reading of the statute, the court only has the authority to hear constitutional challenges to the actions of the Secretary. It argues that defendant's fifth amendment challenge in this case is meritless as it is clear that the Secretary followed the regulations set out at 20 C.F.R. § 10.321 and in so doing provided defendant the process to which he was due.

### C. Defendant's Argument

Defendant argues that § 8128(b) does not preclude judicial review in this instance as he is not seeking reconsideration of a decision *"allowing* or *denying* payment," but the decision on his obligation to reimburse the government for payments which were found in retrospect to have been incorrectly made. His contention, therefore, is that denial of judicial review of the Secretary's decision in this regard would amount to a deprivation of property without due process of law. Defendant also argues that whether repayment would defeat the purpose of the FECA or "would be against equity and good conscience" are questions which are inappropriate for summary judgment.

## III. *Conclusion*

### A. Constitutional Challenge

■ Plaintiff concedes that the court is authorized to hear constitutional challenges to the Secretary's actions. *See Paluca v. Secretary*, 813 F.2d 524, 526 (1st Cir.), *cert. denied*, — U.S. —, 108 S.Ct. 328, 98 L.Ed.2d 355 (1987), citing *Rodrigues v. Donovan*, 769 F.2d 1344, 1347–48 (9th Cir.

1985) (§ 8128(b)'s language "under this subchapter" "refers to statutory, and not constitutional action"). One may not circumvent the statute by disguising a claim for benefits or an objection to the denial of benefits as a constitutional challenge. *Traynor v. Walters*, 791 F.2d 226, 228 (2d Cir.1986), *cert. granted,* —— U.S. ——, 107 S.Ct. 1368, 94 L.Ed.2d 684 (1987); *Pappanikoloaou v. Administrator of the VA,* 762 F.2d 8, 9 (2d Cir.), *cert. denied,* 474 U.S. 851, 106 S.Ct. 150, 88 L.Ed.2d 124 (1985). To be considered, the Secretary's actions must be challenged as constitutionally defective, *viz,* in this case, that the decision to recoup and determine the amount of the alleged overpayment *constituted a deprivation of property without due process of law.* In this light, defendant's argument that these questions are inappropriate for summary judgment is unsound. Whether the Secretary *made the correct decision* depends on the merits of the dispute and presents a statutory challenge; whether he *afforded defendant the due process* rights guaranteed to him by the fifth amendment is a constitutional question and does not involve the merits of the dispute. The correctness of the decision raises questions of material fact which preclude summary judgment. *See infra.* The due process issue poses no questions of fact and warrants the entry of judgment for plaintiff.

■ Defendant had a property interest in the retention of the benefits paid to him. *See Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). Before he is deprived of that interest he must be afforded notice and opportunity for a hearing appropriate to the nature of the case. *Bell v. Burson,* 402 U.S. 535, 542, 91 S.Ct. 1586, 1591, 29 L.Ed.2d 90 (1971). "Procedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property." *Carey v. Piphus,* 435 U.S. 247, 259, 98 S.Ct. 1042, 1050, 55 L.Ed.2d 252 (1978). In determining what process is due, "we must weigh the strength of the individual's interest, the risk of erroneous deprivation, the probable value, if any, of requested additional procedures, and the state's interest in providing (or not providing) those procedures." *Baden v. Koch,* 799 F.2d 825, 831 (2d Cir. 1986); *accord Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

The record illustrates the procedures afforded defendant to ensure that his position was heard and considered. Those procedures, detailed at 20 C.F.R. § 10.321, undeniably provide defendant with the notice and opportunity to be heard to which he is constitutionally entitled. The record also illustrates that defendant took advantage of each of these procedures. Indeed, he succeeded in obtaining a reversal of the HR's initial decision that he was at fault in causing the benefits to be paid. Defendant's only claim as to this procedure is that the court should be part of the process. But the fifth amendment does not require that the courts act as forums for final review on the merits of individual cases. *Bishop v. Wood,* 426 U.S. 341, 349–50, 96 S.Ct. 2074, 2079–80, 48 L.Ed.2d 684 (1976). It only requires that the court ensure that the procedures afforded one whose life, liberty or property is subject to deprivation are adequate. The procedures set out at § 10.321 are found to be adequate and have been provided to defendant. Accordingly, so much of the defense which is based on a constitutional challenge must be rejected and summary judgment entered for plaintiff in this regard.

## B. Statutory Challenge

■ The heart of defendant's challenge is that he is entitled to review of the Secretary's decision that requiring him to return the payments would be consistent with the purposes of the FECA and not against equity or good conscience. As noted previously, this question and the question regarding how much money should be repaid are not constitutional challenges, but challenges to the application of the statute.

Section 8129 provides for the recovery of overpayments made to an individual because of an error of fact or law. Although the statute does not cover the situation when an overpayment or improper payment has been made and no future payments are available from which to recoup the past overpayment, Regulation § 10.321(b) provides that the individual should make the

appropriate refund. Unlike § 8128, neither § 8129 nor its implementing regulations contain a provision that the Secretary's decision is final and conclusive. Section 8128 provides the Secretary with unreviewable discretion in *"allowing* or *denying* a payment." It has nothing to do with the recoupment of payments which have already been allowed. *See Paluca,* 813 F.2d at 528 (distinguishing *United States v. Lorenzetti,* 467 U.S. 167, 104 S.Ct. 2284, 81 L.Ed.2d 134 (1984), as holding that § 8132—concerning the reimbursement to the Employees' Compensation Fund of compensation received from a tort judgment rendered under a state no-fault insurance statute—did not preclude judicial review). In § 8128(b), Congress chose language which was comprehensive and unambiguously precluded judicial review. *Lindahl v. OPM,* 470 U.S. 768, 780 n. 13, 105 S.Ct. 1620, 1627 n. 13, 84 L.Ed.2d 674 (1985). Its failure to use the same language in § 8129 strongly suggests that it did not intend to vest the Secretary with unreviewable discretion with regard to decisions made under that suggestion. *Id.*

Accordingly, to the extent plaintiff's motion seeks to preclude defendant from challenging the Secretary's decision that it would not be inconsistent with the purpose of the FECA nor against equity or good conscience to order defendant to repay the benefits he received it is denied. Section 8129 does not provide plaintiff with final authority nor does it bar judicial review. The statute does not prevent defendant from contesting the amount of the overpayment. The motion is granted with respect to defendant's challenge of the Secretary's decision as a deprivation of property without due process of law.

Plaintiff's motion is, therefore, granted in part and denied in part. The parties shall report as to their time requirements for further pretrial processing of this matter, including motions, on or before April 5, 1988.

SO ORDERED.