**Benjamin S. PURSER, Sr.**

v.

**UNITED STATES DEPARTMENT OF LABOR.**

No. 3:91–0274.

United States District Court, M.D. Tennessee, Nashville Division.

Oct. 3, 1996.

Thomas H. Dundon, Nashville, TN, for plaintiff.

Anjali Ashley, Washington, D.C., for defendant.

## MEMORANDUM

CAMPBELL, District Judge.

Pending before the Court are cross motions for summary judgment (Docket Nos. 15, 21) and various briefs filed by the parties in support of their respective motions. The Court heard oral argument on the motions on August 16, 1996. For the reasons set forth herein, Plaintiff's Motion is GRANTED in part and DENIED in part, and Defendant's Motion is GRANTED in part and DENIED in part.

The parties are directed to file briefs by October 18, 1996, addressing the actual amounts that should be used in making the required calculations, based on the conclusions reached in this Memorandum.

### Factual and Procedural Background

Plaintiff is a Special Agent for the Federal Bureau of Investigation ("FBI") who has supervised the Nashville FBI office since 1981. On April 15, 1984, Agent Purser was injured when a member of the Goodlettsville Police Department, apparently unintentionally, shot him twice in the back as Agent Purser attempted to apprehend an escaped felon. One shot resulted in injuries to the Plaintiff's abdominal area, and the other shot resulted in injuries to Plaintiff's right leg.

Two days later, a notice of traumatic injury was filed on the Plaintiff's behalf with the Office of Workers' Compensation Programs ("OWCP") of the Department of Labor. OWCP subsequently reimbursed the Plaintiff for medical expenses and leave used during his recovery.

In November, 1984, Plaintiff filed a civil suit against the police officer who shot him and the City of Goodlettsville, Tennessee. A settlement of the lawsuit in February, 1986 resulted in payment to the Plaintiff on a structured basis. The settlement agreement was placed under seal but the terms of the agreement provided for limited disclosure to certain parties including officials of the federal government. Plaintiff received his first payment under the settlement on February 13, 1986, a portion of which was paid to his attorneys for services in the settled case.

After the settlement of the civil suit, OWCP sought repayment from Plaintiff pursuant to 5 U.S.C. §§ 8131 and 8132 of the Federal Employees Compensation Act. After some negotiations between the parties regarding the amount due, the OWCP requested repayment of $33,810.20, and the Plaintiff paid that amount in January, 1988.

On July 31, 1989, OWCP issued an award of compensation to Agent Purser (a schedule award) for 66% permanent partial impairment for his leg injury. The scheduled payments totaled $151,873.30.

In October, 1989, Plaintiff filed an appeal of the OWCP decision to the Employees' Compensation Appeals Board ("ECAB" or "Board"). Plaintiff challenged the OWCP's: (1) failure to allocate the settlement between the leg injury and the abdominal injury; (2) finding that the actual flat fee paid to his attorney was reasonable, and using that amount in its calculations (rather than 33% of the recovery); and (3) using the present value of third-party payments not yet received in its calculations.

In November, 1990, ECAB held that OWCP properly did not allocate the settlement amount between the Plaintiff's leg and abdominal condition. The Board also upheld OWCP's decision to use the actual fee paid to legal counsel in its calculations. As to the third issue, however, the Board determined that OWCP should have included in its calculations only the third-party payments actually received by the Plaintiff. The Board remanded for OWCP to amend its calculations in light of the Board's decision.

In March, 1991, OWCP issued Plaintiff a check for $74,355.56. OWCP explained that $72,663.34 of the amount paid was owed un-

der the schedule award for his leg injury, and the remaining $1,692.22 was owed due to the Plaintiff's overpayment to OWCP in January, 1988.

In a letter dated March 11, 1991, OWCP notified Plaintiff that pursuant to 5 U.S.C. § 8132, it was entitled to 80% of the $50,000 third-party settlement payment Mr. Purser would receive on March 15, 1991. Plaintiff received the money, but has not forwarded the Government the amount requested. Instead, Plaintiff filed this declaratory judgment action.

Since this suit has been pending, Plaintiff has also received another payment under the settlement of $70,543. OWCP has also requested a portion of this payment, and the Plaintiff has refused that request. Both claims for repayment are the subject of the Secretary's counterclaim against the Plaintiff.

In his Complaint, Plaintiff requests a declaratory judgment that: (1) he has suffered two injuries within the meaning of FECA; (2) he has received no compensation for the injury to his internal organs; (3) the Secretary is not entitled to reimbursement from that portion of the third-party payments attributable to his abdominal injury, or to withhold benefits due on account of the receipt of those payments; and (4) by asserting his right to reimbursement, the Secretary has illegally deprived Plaintiff of his property without due process, and has acted in violation of statutory authority.

*Statutory and Regulatory Background*

The Federal Employees's Compensation Act ("FECA") established a comprehensive system for compensating federal employees injured on the job. The Secretary of Labor delegated his responsibility for overseeing FECA to the Director of the Office of Workers' Compensation Programs ("OWCP"). A federal employee suffering a work-related injury is entitled to compensation for the disability, which includes payment for doctor-recommended services and supplies. 5 U.S.C. §§ 8102, 8103.

If an employee suffers a permanent disability (full or partial), the employee is entitled to a "schedule award"—compensation at a certain percentage rate of his monthly pay for a certain period of time for injuries to particular portions of the body. 5 U.S.C. § 8107. Employees who have filed a claim for loss due to a "traumatic injury" may receive a continuation of their pay for 45 days, and may also use annual or sick leave to avoid an interruption in receipt of their wages. 5 U.S.C. § 8118. If an employee does use annual or sick leave to avoid interruption of income during disability and later a claim for compensation is approved, the employee may "buy back" the used leave and have it credited to the employee's account. 20 C.F.R. § 10.310.

The Secretary is authorized to determine the amount of compensation to be paid to the injured employee. 5 U.S.C. § 8124(a). After this determination is made, the employee has 30 days to request a hearing on his claim before OWCP as a representative of the Secretary; and then OWCP must notify the employee of a decision within 30 days of the hearing. 5 U.S.C. § 8124(b).

The Secretary may later review an award and may modify the compensation decision under 5 U.S.C. § 8128(a). Subsection (b) of that statute, at issue in this case, provides:

> The action of the Secretary or his designee in allowing or denying a payment under this subchapter is—
>
> (1) final and conclusive for all purposes and with respect to all questions of law and fact;
>
> (2) not subject to review by another official of the United States or by a court by mandamus or otherwise...

Congress directed the Secretary to promulgate rules and regulations to create an Employees' Compensation Appeals Board ("ECAB") with authority to review decisions of OWCP. 5 U.S.C. § 8149; 20 C.F.R. §§ 501–599; 10.139.

FECA also provides the Secretary with subrogation rights. If the employee receives money from a third party who is liable for the injury, the employee is required to repay a portion of that amount to the Secretary. Section 8132 of FECA provides in relevant part:

If an injury ... for which compensation is payable .... is caused under circumstances creating a legal liability in a person other than the United States to pay damages, and a beneficiary entitled to compensation from the United States for that injury ... receives money or other property in satisfaction of that liability as a result of suit or settlement ... the beneficiary, after deducting therefrom the costs of suit and a reasonable attorney's fee, shall refund to the United States the amount of compensation paid by the United States and credit any surplus on future payments of compensation.

The beneficiary may retain, as a minimum, one-fifth of the net amount of the recovery after the costs of litigation or settlement are deducted from the third-party recovery, and the beneficiary also retains an amount for reasonable attorney's fees. *Id.* If compensation has not yet been paid to the beneficiary, he must "credit the money or property on compensation payable to him by the United States for the same injury." *Id.*

The specific calculations to be used in applying this statute are set forth in 20 C.F.R. § 10.503. The regulation explains that reasonable attorney's fees and expenses are deducted from the gross amount of settlement. 20 C.F.R. § 10.503(a). After deduction of fees and expenses, the beneficiary is entitled to retain one-fifth of the net amount of the money remaining. 20 C.F.R. § 10.503(b). The amount of the benefits that have been paid to the employee are then refunded to OWCP. 20 C.F.R. § 10.503(c). Finally, any surplus remaining after proper refund has been made to OWCP may be retained by the beneficiary but shall be credited by OWCP against future payment of benefits for the same injury. 20 C.F.R. § 10.503(d).

*Summary Judgment Standards*

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment may be rendered if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

In order to prevail, the movant has the burden of proving the absence of a genuine issue of material fact as to an essential element of the opposing party's claim. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–25, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

Both parties in this case agree that no material facts are in dispute, and that the only issues for decision are strictly legal ones.

*Jurisdiction*

The Secretary argues that this Court does not have jurisdiction to order the relief the Plaintiff requests. To support his argument, the Secretary relies on 5 U.S.C. § 8128(b).

Plaintiff argues, on the other hand, that Section 8128(b) applies only to challenges to the Secretary's decision to allow or deny payment, not to issues involving recoupment of payments made. Plaintiff also argues that the courts have fashioned an exception to the judicial review bar of Section 8128(b) in cases challenging the constitutionality of the Secretary's actions, and in cases where the Secretary has exceeded statutory authority.

In support of his first argument, Plaintiff primarily relies on the United States Supreme Court's decision in *U.S. v. Lorenzetti,* 467 U.S. 167, 104 S.Ct. 2284, 81 L.Ed.2d 134 (1984). In *Lorenzetti,* the Court considered the issue of whether the United States may recover FECA payments for medical expenses and lost wages under Section 8132 from an employee whose third-party tort recovery compensates him solely for noneconomic losses, like pain and suffering. 467 U.S. at 167–69, 104 S.Ct. at 2286.

The Plaintiff in *Lorenzetti* had recovered a tort judgment compensating him solely for noneconomic losses resulting from an injury for which he had previously received FECA benefits. At 167–71, 104 S.Ct. at 2286–87. The Secretary then requested reimbursement for the FECA payments that had been made to the Plaintiff. *Id.* The Plaintiff refused the request and sued for a declaratory judgment that he was not required to reimburse the Secretary. *Id.*

In concluding that the Plaintiff was required to reimburse the Secretary, the Court

made no mention of the judicial review bar set forth in Section 8128(b). *See also Green v. U.S.*, 775 F.2d 964 (8th Cir.1985) (Court reviewed recoupment decision under Section 8132 without reference to Section 8128(b)); *Ostrowski v. U.S. Dept. of Labor*, 653 F.2d 229 (6th Cir.1981) (same).

In *Paluca v. Secretary of Labor*, 813 F.2d 524, 528 (1st Cir.1987), the First Circuit Court of Appeals explained the *Lorenzetti* Court's failure to mention Section 8128(b) by explaining that that provision prohibits review only of the "action of the Secretary ... in *allowing or denying* a payment." In *Lorenzetti*, the court reasoned, the payment had already been allowed. *Id.* Therefore, the court stated:

> ... the question had changed from one dealing with the unreviewable discretion of the Secretary—'allowing or denying a payment'—to one involving the question of *reimbursement* out of a tort judgment rendered under a state no-fault insurance statute. Section 8128(b) does not preclude review of that question.

*Id.*

Similarly, in *U.S. v. Vetti*, 681 F.Supp. 986, 990–91 (D.Conn.1988), the court determined that the judicial review prohibition of Section 8128(b) did not apply to issues raised under Section 8129, which sets forth the circumstances under which an individual may be required to repay to the Secretary any overpayments received. The Plaintiff had received compensation payments under FECA, which the OWCP, affirmed by ECAB, later found to be inappropriate because Plaintiff's injury was not work-related. 681 F.Supp. at 988.

The OWCP then determined, under Section 8129, that it was entitled to repayment from the Plaintiff because, in the words of Section 8129, he was not "without fault" in causing the overpayment. *Id.* The OWCP subsequently reversed itself, and found the Plaintiff to be "without fault," but denied waiver of the overpayment because, under Section 8129, recovery "would defeat the purpose of the [statute]," and it would not be "against equity and good conscience" to require repayment. *Id.* ECAB affirmed that decision. *Id.*

In rejecting the Secretary's jurisdictional argument, the court pointed out that unlike Section 8128, neither Section 8129, nor its implementing regulations, contain a judicial review bar. 681 F.Supp. at 991. Section 8128, the court explained, relates only to review of the Secretary's decision to allow or deny a payment:

> It has nothing to do with the recoupment of payments which have already been allowed.... In § 8128(b), Congress chose language which was comprehensive and unambiguously precluded judicial review ... Its failure to use the same language in § 8129 strongly suggests that it did not intend to vest the Secretary with unreviewable discretion with regard to decisions made under that [section].

681 F.Supp. at 991. *See also Czerkies v. U.S. Dept. of Labor*, 73 F.3d 1435, 1440–41 (7th Cir.1996) (concluding that review of legislative history reveals limited scope of Section 8128(b)). Consequently, the court held, it was not barred from reviewing ECAB's decision with regard to the waiver issue, or with regard to the amount of any overpayment. *Id.*

The *Paluca* Court, then, held that Section 8128(b) does not preclude judicial review of the Secretary's decisions regarding recoupment from employees of third-party payments under Section 8132. Similarly, the *Vetti* Court held that Section 8128(b) does not preclude judicial review of the Secretary's decisions regarding waiver of his ability to recover overpayments to employees, and the amount of those overpayments under Section 8129.

The Secretary seeks to distinguish these decisions, as well as *Lorenzetti*, by arguing that it is not contending that Section 8128(b) bars review of decisions made under Section 8132, but that the issues the Plaintiff seeks to have the Court decide have already been addressed by ECAB in "allowing or denying a payment." Consequently, the Secretary argues, even though this Court may have jurisdiction to make decisions interpreting the provisions of Section 8132, if the Secretary has already made a decision on the issue in the process of "allowing or denying a

payment," the Court may not review that interpretation.

The Court must determine then precisely what issues the Plaintiff seeks to have it review. The heart of the Plaintiff's claim is that the Secretary is not entitled to recoupment of the portion of his tort judgment that is attributable to his abdominal injury because the Secretary has not compensated him for that injury. The Plaintiff points out that he received a "schedule" award of disability only for his leg injury because an award of disability for an abdominal injury is not available on the "schedule." *See* 5 U.S.C. § 8107; 20 C.F.R. § 10.304.

It appears to the Court that Plaintiff's argument is based on an interpretation of the language of Section 8132. Section 8132 provides for recoupment of the amount of compensation paid by the Secretary to the employee, and for credit on any future payments due to the employee for the same injury.

> If an injury ... for which compensation is payable ... is caused under circumstances creating a legal liability in a person other than the United States to pay damages, and a beneficiary entitled to compensation from the United States *for that injury* ... receives money or other property in satisfaction of that liability as a result of suit or settlement ... the beneficiary, after deducting therefrom the costs of suit and a reasonable attorney's fee, shall refund to the United States the amount of compensation paid by the United States and credit any surplus on future payments of compensation payable to him *for the same injury* ... If compensation has not been paid to the beneficiary, he shall credit the money or property on compensation payable to him by the United States *for the same injury* ...

5 U.S.C. § 8132 (emphasis added).

Plaintiff is contending that ECAB was wrong in deciding that the leg injury, for which he has admittedly received "compensa-

tion," is the "same injury" as the abdominal injury for which he contends he has not received compensation. Because these two injuries are not the same, within the meaning of Section 8132, Plaintiff argues, the Secretary is entitled to recoupment only from the portion of the third-party judgment that is attributable to the leg injury. Plaintiff also contends that he has not been "compensated," within the meaning of Section 8132, for his abdominal injury. Finally, Plaintiff argues that ECAB was incorrect in its calculation of a "reasonable attorney's fee" as that term is used in Section 8132.

All of these arguments are based on an interpretation of Section 8132. The Secretary contends, however, that in determining the validity of these arguments, the Court will be required to review a decision of the Secretary in "allowing or denying a payment" under Section 8128(b). But a review of the ECAB decision in question undermines the Secretary's position.

In a written decision issued on November 19, 1990, ECAB stated at the outset that the issues to be decided related to whether OWCP "in computing its credit against a third-party recovery obtained by appellant" properly: (1) refused to allocate the settlement amount between Plaintiff's leg condition and his abdominal conditions; (2) found that the attorney's fee actually paid by appellant was a reasonable fee; and (3) included the present value of future third-party payments. In ruling on these issues, ECAB explicitly interpreted the language of Section 8132, including the terms: "same injury," "compensation," and "reasonable attorney's fee."

These issues do not involve the merits of Plaintiff's underlying compensation claim, or the Secretary's "allowing or denying a payment."[1] Plaintiff is not seeking to have the Court reverse the Secretary's decision denying him disability compensation for his abdominal injury. Nor is he contesting the percentage of permanent partial disability

---

1. Decisions "allowing or denying a payment," which courts have held are nonreviewable, include, for example, the Secretary's determination that an employee was not entitled to temporary total disability payments during a scheduled award period, *Staacke v. U.S.*, 841 F.2d 278 (9th Cir.1988); and the Secretary's determination as to the proper amount to be awarded an employee's attorneys under Section 8127, *Hamby v. Janer*, 808 F.2d 1433 (11th Cir.1987).

the Secretary assigned to his leg injury. Plaintiff is seeking review of ECAB's decision regarding recoupment, which turned on an interpretation of the terms used in Section 8132.

■ For the reasons described above, the Court concludes that the judicial review bar of Section 8128(b) does not apply in this case.

Therefore, it is not necessary to address Plaintiff's arguments relating to whether the Secretary acted unconstitutionally or in excess of statutory mandate in this matter.

### Standard of Review

Having determined that the Court has jurisdiction to review ECAB's Section 8132 determinations, the Court must decide what standard of review it should apply in reviewing those determinations. The Secretary contends that the Court should review the agency's interpretations of Section 8132 to determine whether they are "arbitrary and capricious." 5 U.S.C. § 706(2)(A). Plaintiff argues that the Court should determine whether the agency acted "contrary to constitutional right, power, or privilege, or "in excess of statutory authority." 5 U.S.C. § 706(2)(B) and (C). In deciding the issues raised in this action, the Court is required to construe the meaning of certain terms found in Section 8132. The Court is not reviewing ECAB's factual findings. Thus, the issues raised involve questions of law.

The Administrative Procedure Act, 5 U.S.C. §§ 551, et seq., specifically authorizes review of questions of law. Section 706(2)(A) permits rejection of agency action "not in accordance with law." Section 706(2)(C) of the Act permits rejection of agency action "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."

The Sixth Circuit has held that in deciding questions of law, in the absence of an unam-

biguous expression of clear congressional intent, the Court is to determine whether the agency's interpretation is based on a "permissible construction of the statute." *Gallagher v. Croghan Colonial Bank*, 89 F.3d 275, 278 (6th Cir.1996) (quoting *Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837, 843–44, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984).

### Defining "Injury"

Plaintiff contends that he was not compensated by OWCP for the "same injury" under Section 8132 for which he was compensated in his settlement of his tort claim. In other words, Plaintiff contends that the third-party settlement includes damages for both his leg injury and his abdominal injury, while OWCP has compensated him only for his leg injury. Therefore, according to the Plaintiff, OWCP is entitled to recoupment only from that portion of the third-party settlement that represents damages for his leg injury (arguably 25% of the recovery).

In rejecting Plaintiff's argument, ECAB gave a broad construction to the term "injury" under Section 8132:

> Appellant's wounds were incurred as part of a series of events within a single workday and he filed a single notice of traumatic injury to cover all the different wounds and conditions arising out of the events of April 15, 1984. The plain meaning of the term "same injury" in section 8132 contemplates the event or series of events giving rise to the third-party recovery, and for which a single notice of traumatic injury was filed, whether the "same injury" causes one or several medical conditions.

(ECAB Decision of November 19, 1990, at 6).

In reaching its decision, ECAB did not rely on the definition of "injury" included in FECA itself, 5 U.S.C. § 8101(5)[2], or the definition found in the OWCP regulations, 20 C.F.R. § 10.5(a)(14)[3]. The regulation states

**2.** Section 8101(5) defines "injury" as including "in addition to injury by accident, a disease proximately caused by the employment, and damage or destruction of medical braces, artificial limbs, and other prosthetic devices which shall be replaced or repaired, and such time lost while such device or appliance is being replaced or repaired; except that eyeglasses and hearing aids would not be replaced, repaired, or other-

wise compensated for, unless the damages or destruction is incident to a personal injury requiring medical services;"

**3.** Section 10.5(a)(14) defines "injury" as "a wound or condition of the body induced by accident or trauma, and includes a disease or illness proximately caused by the employment for which benefits are provided under the Act." According

that "injury" means "a wound or condition of the body induced by accident or trauma," and both the regulation and the statute contain a nonexhaustive list of conditions that are to be included in the definition.[4]

Instead, ECAB appears to have relied on the definition of "traumatic injury" set forth in the regulations:

> *Traumatic injury* means a wound or other condition of the body caused by external force, including stress or strain, which is identifiable as to time and place of occurrence and member or function of the body affected. The injury must be caused by a specific event or incident or series of events or incidents within a single work day or work shift.

20 C.F.R. § 10.5(a)(15).

A review of the regulations indicate that the term "traumatic injury" contains a temporal element, *i.e.* an injury incurred in a single workday, to distinguish it from an "occupational disease or illness." These conditions are treated differently for purposes of some of the regulations. For example, claims for traumatic injuries must be filed within 30 days from the date on which the injury occurred, while a claim for an occupational disease or illness must be filed within 30 days from the date the employee first became aware that the disease or illness was employment-related. 20 C.F.R. § 10.101(a), (b). In addition, those with traumatic injuries must file a different claim form than those with an occupational disease or illness. 20 C.F.R. § 10.100(a), (b).

There is no support in the regulations or otherwise for applying the definition of "traumatic injury" to the term "same injury" in Section 8132. Applying that definition to the term "same injury" produces illogical and absurd results. For example, an FBI agent who is taken hostage during an attempt to apprehend an escaped felon and who is shot in the leg by the escapee at 7:00 a.m., and shot in the arm by that same individual at 7:00 p.m., would have only incurred one "injury" under ECAB's interpretation of Section 8132. Therefore, if, for whatever reason, the agent obtained a third-party recovery for his arm injury only, ECAB would take the position that it could recoup from that recovery all the compensation it paid the agent for his leg injury.[5] The Court is not persuaded that Congress intended such a strained, inequitable interpretation of the statute.

In reaching its decision, ECAB also relied—as does the Secretary in this action—on the Supreme Court's decision in *U.S. v. Lorenzetti, supra.* The Court is of the opinion, however, that the *Lorenzetti* decision does not support the Secretary's strained interpretation of the term "same injury." In *Lorenzetti,* the Supreme Court determined that the Secretary could seek recoupment from a third-party recovery consisting of an element of damages—pain and suffering—for which the Government was not liable under FECA. 467 U.S. at 178, 104 S.Ct. at 2291. Unlike this case, however, there was no dispute that the plaintiff in *Lorenzetti* had suffered, and obtained a recovery for, only one "injury".[6] To the extent *Lorenzetti* offers any guidance in this case, it is the Supreme

---

to the regulation, the term includes "damage to or destruction of medical braces, artificial limbs, and other prosthetic devices which shall be replaced or repaired; except that eyeglasses and hearing aids shall not be replaced, repaired, or otherwise compensated for, unless the damage or destruction is incident to a personal injury requiring medical services."

4. Although not necessarily dispositive of the issue, the Court notes that the definition of "injury" and the definition of "traumatic injury" contained in the regulations use the singular form of the terms "wound" or "condition." 20 C.F.R. §§ 10.5(a)(14), (15). It is undisputed that Plaintiff's leg injury and his abdominal injury were caused by two separate bullets and involved two separate "wounds."

5. Moreover, under the Secretary's interpretation, if the FBI agent was also shot in the abdomen at 8:00 p.m., he would not be entitled to disability compensation for his abdominal injury, but any third-party recovery that he received for the abdominal injury would be subject to recoupment for the leg injury.

6. In fact, in a footnote, the *Lorenzetti* Court recognized a limitation on the government's general right of reimbursement where the third party recovery consists of property damages:

> The term 'damages' clearly refers back to the 'injury or death' that gives rise to the third party's legal liability ...

At 174 n. 3, 104 S.Ct. at 2289 n. 3.

Court's repeated admonition to interpret Section 8132 according to its "plain meaning." 467 U.S. at 173, 176, 104 S.Ct. at 2288, 2290. The plain meaning of the term "injury" does not include all the wounds an individual may incur during an entire workday.

Finally, to the extent ECAB relied on the fact that the Plaintiff filed only one Notice of Traumatic Injury in determining that the injuries should be treated as one, the Court finds that reliance misplaced. As explained above, the meaning of the term "traumatic injury" in the regulations is separate and distinct from the meaning of the term "injury" in Section 8132. The regulations provide that a claim may be made either for "traumatic injury" or "occupational disease or illness." It does not require that a separate claim be made for each injury suffered.[7]

■ In conclusion, the Court is of the opinion that ECAB's construction of the term "same injury" as used in Section 8132 is not logical or reasonable. ECAB's interpretation is not based on a permissible construction of the statute, and is not in accordance with law.

■ Accordingly, the Court believes the appropriate method of calculating recoupment under Section 8132 is to allocate the third-party settlement between the leg injury and the abdominal injury. The Secretary should then apply the schedule award for the leg injury and the medical costs and buy back costs attributable to the leg injury to the portion of the settlement attributable to the leg injury, and apply the remaining medical costs and buy back costs to the portion of the settlement attributable to the abdominal injury.

### Defining "Compensation"

Section 8132 provides that, in determining the appropriate amount of recoupment, a deduction from a third-party recovery be made for an amount to represent reasonable attorney's fees and costs of collection, and then one-fifth may be subtracted from that amount, to be retained by the employee. 5

U.S.C. § 8132; 20 C.F.R. § 10.503. The remaining funds are to be used to repay the Secretary for any compensation paid to the employee "for the same injury." *Id.* Any surplus remaining is then deducted from any future payments to be made by the Secretary to the employee. *Id.*

Plaintiff argues that he did not receive any "compensation" for his abdominal injury. ECAB rejected that argument:

> The Act defines 'compensation' as 'the money allowance payable to an employee ... and any other benefits paid for from the Employees' Compensation Fund ...' ... In addition to his right leg schedule award, he has received compensation in the form of medical benefits for his abdominal wounds and leave buy back for disability caused by both of his wounds.

(ECAB Decision of November 19, 1990, at 6) (footnote omitted).

Plaintiff argues that ECAB ignored the limitation contained in the statutory definition of "compensation" in reaching its decision. The Act defines "compensation" as including "the money allowance payable to an employee or his dependents and any other benefits paid for from the Employees' Compensation Fund, but this does not in any way reduce the amount of the monthly compensation payable for disability or death." 5 U.S.C. § 8101(12).

Plaintiff contends that including medical costs and leave buy back costs in determining that he was "compensated" for his abdominal injury would cause a reduction of the amount of the monthly compensation payable to him for the disability resulting from his leg injury. More specifically, Plaintiff argues that including these costs in arriving at the amount of compensation creates a surplus that, under Section 8132, must be exhausted before he is entitled to any portion of the schedule award for his leg injury. "If the definition of compensation had been applied as required by statute, that is so as not to in any way reduce the amount of monthly compensation payable, the leg injury surplus

---

7. The Notice filed in this case stated the nature of the injury as "lower back, internal organs, and

right hip."

would have been zero." (Memorandum Of Law In Support Of Plaintiff's Motion For Summary Judgment, at 15–16).

Carried to its logical conclusion, Plaintiff is arguing that Section 8132's requirement that an employee repay any "compensation" he has received from the Secretary is limited by the compensation definition that prohibits reduction of disability payments with other payments made to the employee.

■ The Court is not persuaded by Plaintiff's strained construction of the statute. The limitation contained in the definition of compensation simply means that in computing disability payments, the Secretary may not deduct from the statutory formula the amount paid for other medical benefits. In other words, in computing the amount owed Plaintiff for disability payments due for his leg, the Secretary may not first deduct the amount of the medical bills and leave buy back costs incurred on behalf of the Plaintiff.

This provision should not be read to prohibit recoupment of payments made to the employee because doing so would reduce the amount of the disability payments. Plaintiff's disability payments have not been reduced because medical leave and buy back costs were included in the "compensation" calculation, they have been reduced, or more accurately, offset, by the third-party recovery, as required by Section 8132.

■ Therefore, the Court concludes that ECAB's construction of the term "compensation," as used in Section 8132, is a permissible construction of the statute.

### Defining "Reasonable Attorney's Fee"

Finally, Plaintiff argues that ECAB did not properly construe the term "reasonable attorney's fee" as it is used in Section 8132. ECAB concluded that in determining what is a "reasonable attorney's fee," the Secretary should look to the amount the Plaintiff actually paid his attorneys in representing him in the lawsuit against the third-party tortfeasors. Plaintiff argues, on the other hand, that he paid his attorneys less than a "reasonable" fee, and therefore, the actual amount he paid his attorneys should not be used in the Section 8132 calculations. In-

stead, Plaintiff contends that the appropriate amount would be 33⅓% of the gross third-party recovery.

■ Plaintiff has cited no authority to support his argument that a "reasonable attorney's fee" under Section 8132 may be a fee that is higher than the actual fee paid. The Court notes that in calculating the reasonableness of attorney's fee requests in other contexts, courts typically begin their analysis with the amount actually charged by the attorney. *See, e.g., Hadix v. Johnson*, 65 F.3d 532, 536 (6th Cir.1995). Furthermore, there is no authority providing that a reasonable fee is the highest fee an attorney could obtain. Therefore, the Court is persuaded that ECAB's construction of the term "reasonable attorney's fee" as used in Section 8132 is a permissible construction of the statute.

### Conclusion

As stated above, the Court concludes that the appropriate method of calculating recoupment under Section 8132 is to allocate the third-party settlement between the leg injury and the abdominal injury. The Secretary should then apply the schedule award for the leg injury and the medical costs and buy back costs attributable to the leg injury to the portion of the settlement attributable to the leg injury, and apply the remaining medical costs and buy back costs to the portion of the settlement attributable to the abdominal injury.

The parties are directed to file briefs by October 18, 1996, addressing the actual amounts that should be used in making the required calculations, based on the conclusions reached in this Memorandum.

It is so ORDERED.