# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued February 13, 2009         Decided August 4, 2009

No. 08-5120

ABINGTON CREST NURSING AND REHABILITATION CENTER, ET AL.,
APPELLANTS

v.

KATHLEEN SEBELIUS, SECRETARY, UNITED STATES
DEPARTMENT OF HEALTH AND HUMAN SERVICES,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:06-cv-01932-RJL)

*Daniel F. Miller* argued the cause for appellants. With him on the briefs were *Barbara J. Janaszek* and *John R. Jacob*.

*Christopher Fonzone*, Attorney, U.S. Department of Justice, argued the cause for appellee. With him on the brief were *Gregory G. Katsas*, Assistant Attorney General, *Jeffrey A. Taylor*, U.S. Attorney, and *Barbara C. Biddle* and *Jeffrica Jenkins Lee*, Attorneys. *R. Craig Lawrence*, Assistant U.S. Attorney, entered an appearance.

Before: GARLAND and GRIFFITH, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* GARLAND.

GARLAND, *Circuit Judge*:  The appellants in this case are skilled nursing facilities that challenge a decision by the Secretary of the Department of Health and Human Services to deny them reimbursement for certain bad debt costs.  The facilities contend that the Secretary's denial violates both the Medicare statute and agency regulations.  The district court granted the Secretary's motion for summary judgment, and we affirm.

I

Appellants are Medicare-certified skilled nursing facilities (SNFs) that provide therapy services to, among others, SNF residents who are eligible for both Medicare and Medicaid benefits ("dual eligible" beneficiaries).  The Medicare program is made up of two principal parts:  Part A, which provides reimbursement for inpatient hospital stays and related services, 42 U.S.C. §§ 1395c–1395i-5; and Part B, which covers hospital outpatient services, physician services, and other services not covered by Part A, *id.* §§ 1395j–1395w-4. The therapy services that SNFs provide are covered under Part B of the Medicare program.

Prior to 1997, Medicare reimbursed SNFs based on their "reasonable costs."  *See generally* 42 U.S.C. §§ 1395f(b)(1), 1395x(v)(1)(A); 42 C.F.R. § 410.152(b)(1).  That methodology permitted the facilities to claim uncollectible Medicare deductibles and coinsurance payments -- amounts owed to the SNFs but uncollectible from either the patient or the patient's state Medicaid program -- as bad debts on their Medicare cost reports.  Medicare then reimbursed the providers for the

uncollectible amounts pursuant to a Medicare regulation, 42 C.F.R. § 413.80.[1]

In the Balanced Budget Act of 1997, Congress changed the payment scheme for SNF services in two respects. Pub. L. No. 105-33, § 4432(a)-(b)(3), 111 Stat. 251, 414-21 (1997).[2] It changed the reimbursement methodology for SNF services covered under Part A from a reasonable cost system to a prospective payment system (PPS) based on a per diem rate. 42 U.S.C. § 1395yy(e). And it changed the methodology for the SNFs' therapy services -- the services at issue in this case -- from reimbursement based on reasonable costs to reimbursement based on a preexisting Medicare Part B fee schedule applicable to physicians. *Id.* § 1395yy(e)(9); *see id.* §§ 1395*l*(a)(8)(A)(i), 1395m(k), 1395w-4.

Consistent with their practice prior to enactment of the Balanced Budget Act, appellants listed their uncollectible deductibles and coinsurance payments as bad debts on the fiscal year 1999 cost reports they submitted to their "fiscal intermediary" -- a private insurance company that processes reimbursements to providers while acting as an agent of the Secretary of the Department of Health and Human Services (HHS). 42 U.S.C. § 1395h (2000); 42 C.F.R. § 413.24(f). The appellants' fiscal intermediary reviewed the 1999 cost reports

---

[1]This regulation is now found at 42 C.F.R. § 413.89. *See* Medicare Program; Changes to the Hospital Inpatient Prospective Payment Systems and Fiscal Year 2005 Rates, 69 Fed. Reg. 48,916, 49,254 (Aug. 11, 2004). For consistency with the filings of the parties, we refer to it throughout as 42 C.F.R. § 413.80. *See also infra* note 5.

[2]The changes applied to cost reporting periods beginning on or after July 1, 1998. Pub. L. No. 105-33, § 4432(d), 111 Stat. at 422.

and disallowed the bad debt claims for uncollectible deductibles and coinsurance payments. The intermediary disallowed the claims on the ground that Medicare's bad debt reimbursement policy "applies only to the reasonable cost payment system" -- the system applicable to SNFs prior to the change to a fee schedule system in the Balanced Budget Act. Intermediary's Position Paper at 4.

The SNFs appealed the intermediary's decision to HHS' Provider Reimbursement Review Board (PRRB). *See* 42 U.S.C. § 1395*oo*(b). On July 21, 2006, a majority of the PRRB disagreed with the intermediary's decision, concluding that, although Congress had changed the payment system, it had not altered the bad debt policy contained in 42 C.F.R. § 413.80. *Extendicare 99 Uncollect Co-In Dual Elig Group v. BlueCross BlueShield Ass'n/United Gov't Servs., LLC-WI*, PRRB Decision No. 2006-D36, at 4-5 (July 21, 2006). On September 12, however, the Secretary, acting through the Deputy Administrator of the Centers for Medicare and Medicaid Services, reversed the PRRB's decision and ruled that the SNFs' bad debts were nonreimbursable under the new fee schedule system. "Medicare's longstanding policy has been not to pay for bad debts for any services paid under a reasonable charge or fee schedule methodology," the Secretary said, and "the bad debt provisions found at 42 C.F.R. 413.80(e) do not apply to services for which Medicare payment is based on reasonable charges or a fee schedule methodology." Decision of the Administrator, Ctrs. for Medicare & Medicaid Servs., *Extendicare 99 Uncollect Co-In Dual Elig Group v. Blue Cross/Blue Shield Ass'n, United Gov't Servs., LLC-WI*, at 11 (Sept. 12, 2006) [hereinafter Secretary's Decision].

The appellants next filed suit in the United States District Court for the District of Columbia pursuant to 42 U.S.C. § 1395*oo*(f), which provides for judicial review of final PRRB

decisions. On March 28, 2008, the court granted the Secretary's motion for summary judgment. *Abington Crest Nursing & Rehab. Ctr. v. Leavitt*, 541 F. Supp. 2d 99, 101 (D.D.C. 2008). The court framed the issue as follows: "Was the Secretary's interpretation of the applicable Medicare law and regulations, to deny the reimbursement of bad debts arising from Part B services provided by Extendicare Facilities [the owner of the SNF plaintiffs], a reasonable construction of the regulations?" *Id.* at 105. The court concluded that it was. *Id.*

The SNFs now appeal from the district court's grant of summary judgment to the Secretary. Our review is *de novo*. *Methodist Hosp. of Sacramento v. Shalala*, 38 F.3d 1225, 1229 (D.C. Cir. 1994). Pursuant to § 1395*oo*(f), we proceed under the judicial review provisions of the Administrative Procedure Act, which require us to set aside agency action if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A).

II

The appellants' first contention is that the Secretary's refusal to reimburse them for uncollectible deductibles and coinsurance "contravenes" the Medicare statute's "prohibition against cross-subsidization." Appellants' Br. 16. Although their briefs do not mention it, the two-step framework of *Chevron U.S.A. Inc. v. Natural Resources Defense Counsel, Inc.* structures our review of HHS' interpretation of the Medicare statute. 467 U.S. 837 (1984). Under that framework, "[i]f the intent of Congress is clear, . . . [a court] must give effect to the unambiguously expressed intent of Congress." *Id.* at 842-43. But "if the statute is silent or ambiguous with respect to the specific issue," the court must uphold the agency's interpretation as long as it is reasonable. *Id.* at 843.

The appellants allege that HHS' denial of their bad debt claims violates the "anti-cross-subsidization" principle of 42 U.S.C. § 1395x(v)(1)(A), which is italicized below:

> (v) Reasonable costs
>
> (1)(A) The reasonable cost of any services shall be the cost actually incurred, excluding therefrom any part of incurred cost found to be unnecessary in the efficient delivery of needed health services, and shall be determined in accordance with regulations establishing the method or methods to be used, and the items to be included, in determining such costs . . . . *Such regulations shall . . . take into account both direct and indirect costs of providers of services . . . in order that, under the methods of determining costs, the necessary costs of efficiently delivering covered services to individuals covered by the insurance programs established by this subchapter will not be borne by individuals not so covered, and the costs with respect to individuals not so covered will not be borne by such insurance programs . . . .*

42 U.S.C. § 1395x(v)(1)(A). The appellants argue that if Medicare does not reimburse the bad debts of Medicare beneficiaries, nonbeneficiary recipients of SNF services will end up bearing those costs, thus transgressing the anti-cross-subsidization principle. *See* Appellants' Br. 16. Indeed, as the Secretary has acknowledged, the Department has long interpreted that principle to permit Medicare to reimburse bad debts when Medicare pays the "reasonable costs" of services. *See* Secretary's Decision at 5-7. But the Secretary has also concluded that this provision applies only to reimbursements based on reasonable *costs*, and not to reimbursements based on reasonable *charges* or on fee schedules. *Id.* at 7, 11.

The first step of our *Chevron* analysis is quickly concluded by reading the statutory text set out above. As is evident on its face, § 1395x(v)(1)(A) is silent on the subject of bad debt -- a point we previously noted in *Kidney Center of Hollywood v. Shalala*. 133 F.3d 78, 86 (D.C. Cir. 1998) ("[T]he statute does not speak directly to the question of bad debt."). Although bad debt may be one of the "indirect costs" referred to in the subsection -- which is apparently the reason the Secretary has applied the subsection's principle to bad debt under reasonable cost systems -- the text is ambiguous in that respect. Even more to the point, the statute does not tell us whether bad debt -- or any other indirect cost -- must be reimbursed under a fee schedule system. There is, therefore, no "unambiguously expressed intent of Congress . . . with respect to the specific issue" before us, and we must proceed to *Chevron*'s second step. 467 U.S. at 842-43.

The second-step question is whether the Secretary permissibly read § 1395x(v)(1)(A) to apply only to reimbursement systems based on reasonable costs, and thus to justify bad debt reimbursement only under such systems. We conclude that this reading was reasonable. Section 1395x is the "definitions" section of the Medicare statute. *See* 42 U.S.C. § 1395x. As indicated by its title, subsection 1395x(v) is the subsection that defines "reasonable costs." *Id.* § 1395x(v). The subsection's anti-cross-subsidization principle is merely an element of that definition: it ensures that "[*t*]*he reasonable cost* of any services shall be the *cost* actually incurred," by requiring that the "necessary *costs* of efficiently delivering covered services to individuals covered by the insurance programs . . . will not be borne by individuals not so covered, and the *costs* with respect to individuals not so covered will not be borne by such insurance programs." 42 U.S.C. § 1395x(v)(1)(A) (emphases added). It was therefore reasonable for the Secretary to read this principle, like the subsection of which it is a part, to

apply only to reimbursement systems based on "reasonable costs."

It was also reasonable for the Secretary to conclude that the fee schedule system, which the Balanced Budget Act applied to SNFs, is materially different from a cost-based system. As the Secretary explained:

> Unlike a reasonable cost payment, payment under a fee schedule is not related to a provider's cost outlay for the service and does not involve costs or, likewise, unrecovered "costs." Under a fee schedule, Medicare makes payment for a specific service for which there is a predetermined rate which includes a margin for profit and which reflects the price of doing business.

Secretary's Decision at 11. Indeed, the Secretary noted that, although Medicare does reimburse providers covered by reasonable cost systems for bad debts, "Medicare's longstanding policy has been not to pay for bad debts for any services paid under a reasonable charge or fee schedule methodology." *Id.*

Appellants dispute the consistency of this "longstanding policy." They note, for example, that Medicare reimburses providers for bad debts under the Part A prospective payment system, notwithstanding that a PPS is not based on actual costs. A fee schedule, they insist, is just a variation of a PPS.

It is true that under the Part A prospective payment system, "the amount of payment per discharge is fixed in advance, is not based on a hospital's actual costs, and is not subject to retroactive adjustment." *Washington Hosp. Ctr. v. Bowen*, 795 F.2d 139, 142 n.2 (D.C. Cir. 1986). But the Secretary reasonably explains that there is also a material difference between the Part A PPS and the physician fee schedule

applicable to SNFs. The Part A PPS is based on hospitals' average *costs* per discharge in an annual base period, *see* 42 U.S.C. § 1395ww(d)(2)(A), and "bad debts incurred during the . . . base period were not included in the calculation of the prospective rates." Secretary's Decision at 13. By contrast, the Part B physician fee schedule is based on prices health care providers *charge*, and "[h]istorically, these prices have reflected the entities['] costs of doing business including expenses such as bad debt." *Id.* (quoting Medicare Program; Provider Bad Debt Payment, 68 Fed. Reg. 6682, 6683 (proposed Feb. 10, 2003)).[3]

As another counterexample to the Secretary's claim of a consistent policy of denying bad debt reimbursement under fee schedule systems, appellants proffer the case of ambulatory surgical centers. Medicare pays such centers according to a fee schedule. *See* 42 U.S.C. §§ 1395k(a)(2)(F), 1395*l*(i)(2)(A). And yet, it nonetheless reimburses their bad debts. *See* Medicare Program; Payment for Facility Services Related to Ambulatory Surgical Procedures Performed in Hospitals on an Outpatient Basis, 52 Fed. Reg. 36,765, 36,771-72 (Oct. 1, 1987).

The Secretary reasonably distinguishes this counterexample as well, explaining that appellants' contention misconstrues the payment method that the Medicare statute specifically prescribes

---

[3]Appellants' opening brief also argued that the Secretary conceded, in a 1998 Program Memorandum, that the Balanced Budget Act did not alter providers' entitlement to reimbursement for bad debts relating to services provided to dual beneficiaries. Appellants' Br. 39 (citing Program Memorandum A-98-18, Medicare & Medicaid Guide (CCH) [1998-1 Transfer Binder] ¶ 46,321). The Secretary responded that this Program Memorandum was only applicable and sent to contractors that made payments under the Part A prospective payment system. *See* Appellee's Br. 44. Appellants did not dispute that response in their reply brief.

for ambulatory surgical centers. Although the statute does require the Secretary to establish a "fair fee" for the services provided by such centers, 42 U.S.C. § 1395*l*(i)(2)(A), the term "fee" does not have its usual meaning because the statute requires the Secretary, in estimating a fair fee, to consider the "costs incurred by such centers." *Id.* § 1395*l*(i)(2)(A)(i). And because payment rates for ambulatory surgical centers are thus based on *costs* rather than *charges*, they are closer to the Part A PPS (under which the Secretary continues to reimburse providers for bad debts) than to the physician fee schedule applicable to SNFs.

Finally, appellants maintain that the Secretary's interpretation of the Medicare statute is unreasonable because "the physician fee schedule, which is now used to pay SNFs for the services that are the subject of this appeal, does not include *any* component of bad debt reimbursement." Appellants' Br. 24. The Secretary disagrees, insisting that the schedule is "based on data reflecting what health care providers *charge*, which historically has taken into account the costs of being unable to collect some co-pays and deductibles." Appellee's Br. 33. We could resolve this dispute on the ground that the appellants bear the burden of proof here, *see City of Olmstead Falls, Ohio v. FAA*, 292 F.3d 261, 271 (D.C. Cir. 2002) ("[T]he party challenging an agency's action as arbitrary and capricious bears the burden of proof."), and that the record is devoid of evidence on this issue. But there is another, more fundamental ground for resolution: Medicare pays the SNFs based on the physician fee schedule not because of a decision made by the Secretary, but because of a decision made by Congress.[4] It may be, as appellants contend, that "the physician fee schedule, which is based on physicians' historical charges, has nothing to do with costs that institutions, like SNFs, incur in providing services to

---

[4]*See* 42 U.S.C. §§ 1395*l*(a)(8)(A)(i), 1395m(k), 1395w-4.

Medicare beneficiaries." Appellants' Reply Br. 2. But if so, the appellants' quarrel is with Congress and not the Secretary.

III

The appellants' second contention is that the Secretary's denial of reimbursement for bad debts "disregards the plain terms" of the Secretary's own regulation. Appellants' Br. 31. The Supreme Court has described the scope of our review of such a contention as follows: "We must give substantial deference to an agency's interpretation of its own regulations. Our task is not to decide which among several competing interpretations best serves the regulatory purpose. Rather, the agency's interpretation must be given controlling weight unless it is plainly erroneous or inconsistent with the regulation." *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994) (internal quotation marks and citations omitted); *see Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414 (1945).

In the fiscal year in question, the regulation at issue, 42 C.F.R. § 413.80(d), provided as follows:

> Under Medicare, costs of covered services furnished beneficiaries are not to be borne by individuals not covered by the Medicare program, and conversely, costs of services provided for other than beneficiaries are not to be borne by the Medicare program. Uncollected revenue related to services furnished to beneficiaries of the program generally means the provider has not recovered the cost of services covered by that revenue. The failure of beneficiaries to pay the deductible and coinsurance amounts could result in the related costs of covered services being borne by other than Medicare beneficiaries. *To assure that such covered service costs are not borne by others, the costs*

> *attributable to the deductible and coinsurance amounts*
> *that remain unpaid are added to the Medicare share of*
> *allowable costs.* Bad debts arising from other sources
> are not allowable costs.

*See* 42 C.F.R. § 413.80(d) (1997) (emphasis added).[5] As is readily apparent, § 413.80(d) incorporates the anti-cross-subsidization principle found in the statutory subsection that we discussed in Part II. *See* 42 U.S.C. § 1395x(v)(1)(A). There is, however, a difference. Unlike the statutory provision, the regulation expressly addresses the bad debt issue and mandates reimbursement of unpaid deductibles and coinsurance to prevent cross-subsidization.

But the fact that the regulation expressly covers bad debt does not answer the question of whether it applies to payment systems based on fee schedules. Just as the statutory provision is located in a subsection that defines "Reasonable Costs," the regulation is located in the part of the Medicare regulations that sets forth the "Principles of Reasonable Cost Reimbursement." 42 C.F.R. Part 413. It was therefore perfectly sensible for the Secretary to read the regulatory anti-cross-subsidization principle in the same manner as its statutory counterpart: that is, to apply only to reasonable cost reimbursement systems. As the Secretary reasonably explained, the regulation's "bad debt

---

[5]As noted in footnote 1 above, this regulation is now found in 42 C.F.R. § 413.89. While this case was pending in the district court, the Secretary published a new subsection, which the Secretary stated was intended to "clarify that payment of bad debts for covered services paid for under a reasonable charge-based methodology or fee schedule is not allowable." Medicare Program; Revisions to Payment Policies, 71 Fed. Reg. 69,624, 69,712 (Dec. 1, 2006). The new subsection provides: "Bad debts arising from covered services paid under a reasonable charge-based methodology or a fee schedule are not reimbursable under the program." 42 C.F.R. § 413.89(i).

provision arises from the reasonable 'cost' anti-cross-subsidization provision[,] which is not controlling under the reasonable charge/fee schedule methodology" set forth in the Balanced Budget Act. Secretary's Decision at 11.

Although there are quite a number of "reasonabl[es]" in that last sentence, they should not obscure our bottom line: the Secretary's interpretation of the Secretary's own regulation is neither "plainly erroneous" nor "inconsistent with the regulation," and it therefore commands our deference. *Thomas Jefferson Univ.*, 512 U.S. at 512.

## IV

Because the Secretary's denial of the appellants' reimbursement request violates neither the Medicare statute nor the program's regulations, the judgment of the district court is

*Affirmed.*