# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued March 18, 2010            Decided June 22, 2010

No. 09-5195

RICHARD F. GONZALEZ AND
RACHEL GONZALEZ, HIS WIFE,
APPELLANTS

v.

DEPARTMENT OF LABOR AND
HILDA L. SOLIS, SECRETARY, DEPARTMENT OF LABOR,
APPELLEES

---

Appeal from the United States District Court
for the District of Columbia
(No. 1:07-cv-00593)

---

*Joseph M. Hannon Jr.* argued the cause for the appellant.

*Alan Burch*, Assistant United States Attorney, argued the cause for the appellee. *R. Craig Lawrence*, Assistant United States Attorney, was on brief.

Before: SENTELLE, *Chief Judge*, HENDERSON and BROWN, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* HENDERSON.

KAREN LECRAFT HENDERSON, *Circuit Judge*: Rachel Gonzalez (Rachel) was injured in the course of federal employment. She received compensation for her injuries from

the Department of Labor (Labor or DOL) under the Federal Employees' Compensation Act (FECA), 5 U.S.C. §§ 8101 *et seq.* She and her husband Richard Gonzalez (Richard) later brought suit against allegedly liable private third parties, ultimately reaching a settlement. Labor demanded reimbursement from the settlement proceeds. The Gonzalezes challenged Labor's demand in the district court and the district court granted summary judgment to Labor. We affirm.

## I.

On June 11, 1997 an elevator's sudden stop injured Rachel at the United States Embassy in Mexico, where she was working. She filed a claim under FECA for injuries including "abdominal laceration, pelvic cyst, aggravation of pelvic adhesions, bilateral pulmonary embolism, left kidney infection, intracranial hematoma, emergency laparatomy and prolonged post-traumatic stress disorder." *R.G. v. Dep't of State*, Decision and Order, Docket No. 06-369, at 1-2 (U.S. Dep't of Labor Employees' Comp. App. Bd. Dec. 13, 2006). Labor accepted the claim and paid her benefits, which continued as of this appeal's outset.

On March 21, 2000 the Gonzalezes brought suit in the District of Columbia Superior Court (Superior Court), alleging two companies' negligence in servicing the elevator caused Rachel's injuries and Richard's loss of consortium. The defendants were Amtech Elevator Services, Inc. (Amtech) and Internacional de Elevadores, S.A. de C.V. (IDESA). Throughout the relevant period Amtech was a subsidiary of an American company named ABM Industries, Inc. (ABM). IDESA, a Mexican company, was also an ABM subsidiary from 1990 until 1996.

If a federal employee receives FECA benefits as the result of an injury for which a third party is liable, Labor is entitled to share in recovery from the third party. 5 U.S.C. § 8132; 20

C.F.R. § 10.710; *see United States v. Lorenzetti*, 467 U.S. 167, 168, 173-74 (1984).  With that in mind, after filing suit against the elevator companies, J. Michael Hannon, the Gonzalezes' lawyer, wrote a letter to Labor proposing that it join the litigation.  He suggested that, rather than relying on its reimbursement rights under FECA, Labor should invoke a preexisting indemnity agreement between the United States and the elevator companies.  According to him, "By asserting its indemnity rights, the United States would recover every dollar paid [to Rachel]; whereas, as a subrogee under FECA that would not likely be the outcome."  Letter from Hannon to Jeffrey Nesvet, Deputy Associate Solicitor, Labor, at 2 (Mar. 23, 2000).

Labor did not join the lawsuit.  Instead, it directed Rachel to continue pursuing her own action against the elevator companies.  *See* 5 U.S.C. § 8131(a)(2) (authorizing Secretary of Labor to require FECA beneficiary to prosecute action against third party in his own name).  It also requested that the Gonzalezes' lawyer "contact [its] office prior to accepting any settlement in order to obtain current information on the amount of compensation paid by the United States and to obtain [its] approval of any settlement where such approval is required." Letter from Augustus Banks, III, Paralegal Specialist, Labor, to Hannon, at 1 (June 7, 2002); *see* 5 U.S.C. § 8132 ("No court, insurer, attorney, or other person shall pay or distribute to the beneficiary or his designee the proceeds of such suit or settlement without first satisfying or assuring satisfaction of the interest of the United States.").

The litigation proceeded and, on September 25, 2002, the Superior Court dismissed all of the Gonzalezes' claims against IDESA for acts and omissions occurring after ABM sold IDESA in 1996; the court held that it did not have personal jurisdiction

over IDESA post-sale. The Gonzalezes appealed that decision[1] while also pursuing settlement negotiations with Amtech and its parent company, ABM.

During the negotiations the Gonzalezes' lawyer consulted Labor to discuss the effect of Rachel's FECA-beneficiary status on a possible settlement. On February 20, 2003 he wrote to Labor to "request that any settlement obtained from [ABM and Amtech] be treated as a payment to Mr. Gonzalez for his loss of consortium claim," leaving Labor's reimbursement from Rachel herself entirely contingent on a future recovery from post-sale IDESA, whose dismissal they were appealing. Letter from Hannon to Catherine P. Carter, Counsel, Labor, at 1. A Labor lawyer responded eight days later, writing, "I am not aware of any case in which we have allowed an entire recovery against one defendant to be allocated to loss of consortium" and concluding that such an approach "is not in the interests of the United States." E-mail from Catherine Carter, Counsel for Claims and Compensation, Labor, to Hannon, at 1-2 (Feb. 28, 2003). She made clear that Labor "must approve any proposed deduction from the gross recovery attributing a portion of the settlement or judgment to damages for loss of consortium." *Id.* at 1. She also made clear that Labor's typical practice was to allocate twenty-five per cent of a joint settlement to a loss of consortium claimant, but that Labor would entertain arguments for a higher allocation and would honor a different allocation prescribed by a judge or jury.

Approximately two months later the Gonzalezes executed a "Confidential Settlement and Joint Tortfeasor Release and Indemnity Agreement" (Settlement Agreement or Agreement) with ABM and Amtech. Settlement Agreement at 1 (May 8,

---

[1]The D.C. Court of Appeals ultimately affirmed the Superior Court's decision. *Gonzalez v. Internacional de Elevadores, S.A.*, 891 A.2d 227 (D.C. 2006).

2003). The Agreement stated that it is "by and between Richard F. Gonzalez and Rachel Gonzalez ('Plaintiffs')" on the one hand and ABM and Amtech on the other. *Id.* It recited that "Plaintiffs and Defendants ABM and Amtech wish[ed] to settle fully and finally all Plaintiffs' claims against ABM and Amtech." *Id.* at 2. It also recited that the Gonzalezes "wish[ed] to" release all claims against IDESA arising before ABM sold it in 1996. *Id.* at 3. In return, ABM and Amtech agreed to pay "Plaintiffs" $625,000 in the form of a check payable to their lawyer's escrow account. *Id.* ¶ 1. The Agreement also provided that the Gonzalezes did not release their claims against IDESA arising post-sale. But post-sale IDESA was not a party to the Agreement, having been dismissed from the case for lack of personal jurisdiction.

The Settlement Agreement also addressed Rachel's duty to reimburse Labor for her workers' compensation benefits. It provided that "Plaintiffs shall have sole responsibility for . . . determining whether any amount of the settlement is owed to the Department of Labor." *Id.* ¶ 10. Then, in paragraph 13, it stated:

> Defendants understand that Plaintiffs as between themselves and in consultation with their attorneys have allocated the consideration paid under this Agreement to Richard Gonzalez whose claims will be dismissed in their entirety with prejudice. Rachel Gonzalez shall continue to prosecute her claim for damages only against IDESA for post-sale claims. This decision is entirely the responsibility of Plaintiffs and their attorneys and shall not otherwise affect their promises contained herein.

After the settlement Labor told the Gonzalezes' lawyer that Rachel was required to reimburse it for some or all of the $216,266.86 it had disbursed to her by that time. It requested that he file the necessary paperwork to calculate the exact

amount owed. He refused, asserting that the applicable laws and regulations do "not allow the Department to claim any of the $625,000 settlement that satisfies Richard Gonzalez's consortium claim." Letter from Hannon to Jeffrey Nesvet, Deputy Associate Solicitor for Employment Benefits, Labor, at 3 (June 19, 2003). According to him, "Only recovery later obtained from IDESA . . . would be available in satisfaction of the lien." *Id.* In response, Labor reviewed the Settlement Agreement and concluded that the defendants had paid the settlement proceeds jointly to Richard and Rachel in exchange for both Gonzalezes releasing their respective claims. Thus, it concluded, Rachel was required to reimburse Labor with some of the proceeds. It repeatedly requested that the Gonzalezes' lawyer file FECA paperwork on her behalf in order to determine the required reimbursement. He repeatedly failed to do so. Then, on October 28, 2004, he requested that Labor issue a final, appealable determination as to her reimbursement obligation.

On February 10, 2005 the Office of Workers' Compensation Programs (OWCP) issued a Notice of Decision, deciding (1) the settlement proceeds had been jointly paid to Rachel and Richard and (2) pursuant to Labor's regulations and procedures regarding allocation of joint settlements, Richard was entitled to retain twenty-five per cent, and no more, of the settlement proceeds as compensation for his loss of consortium. The OWCP allocated the remaining seventy-five per cent of the settlement proceeds—$468,750—to Rachel. It then calculated that, from that amount, Rachel was required to pay Labor $152,091.16.[2] Rachel appealed the OWCP's decision to the

---

[2]This amount was less than the benefits Labor had paid Rachel because, by statute, Rachel was entitled to keep a substantial portion of the recovery regardless of the FECA compensation she had received. *See* 5 U.S.C. § 8132; 20 C.F.R. § 10.711 (calculating amount beneficiary retains). This framework provides an incentive for FECA beneficiaries to pursue claims against third parties.

Employees' Compensation Appeals Board, which affirmed it on December 13, 2006. Approximately three months later, on March 28, 2007, the Gonzalezes filed the instant lawsuit challenging Labor's final decision. The district court granted summary judgment to Labor on March 26, 2009. *Gonzalez v. Dep't of Labor*, 603 F. Supp. 2d 137 (D.D.C. 2009).[3] This appeal timely followed. Our review is *de novo*. *See Chao v. Day*, 436 F.3d 234, 235 (D.C. Cir. 2006).

## II.

As the United States Supreme Court has explained, "an employee who receives FECA payments is required to reimburse the United States for those payments, to a specified extent, when he obtains a damages award or settlement from a third party who is liable to the employee for his injuries." *Lorenzetti*, 467 U.S. at 168 (citing 5 U.S.C. § 8132).[4] There are

---

[3]In addition, the district court granted summary judgment to the Gonzalezes on Labor's claim that it was entitled to impose a surcharge on the Gonzalezes' reimbursement obligation. *Gonzalez*, 603 F. Supp. 2d at 147. That decision is not at issue here.

[4]5 U.S.C. § 8132 provides,

If an injury or death for which compensation is payable under this subchapter is caused under circumstances creating a legal liability in a person other than the United States to pay damages, and a beneficiary entitled to compensation from the United States for that injury or death receives money or other property in satisfaction of that liability as the result of suit or settlement by him or in his behalf, the beneficiary, after deducting therefrom the costs of suit and a reasonable attorney's fee, shall refund to the United States the amount of compensation paid by the United States and credit any surplus on future payments of compensation payable to him for the same injury. No court, insurer, attorney, or other person shall pay or distribute to the

only two conditions precedent to a FECA beneficiary's reimbursement obligation: (1) she "must have suffered an injury or death under circumstances creating a legal liability in a third party to pay damages" and (2) she "must have received money or other property in satisfaction of that liability." *Lorenzetti*, 467 U.S. at 173-74 (citing 5 U.S.C. § 8132).

While FECA makes clear a beneficiary's reimbursement obligation, it does not explain how Labor should handle a joint recovery by a beneficiary and her spouse. Instead, FECA authorizes the Secretary of Labor (Secretary or SOL) to "decide all questions" regarding FECA reimbursement. 5 U.S.C. § 8145; *see also Chevron, U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984) (if statute is silent or ambiguous with respect to specific issue, court will uphold agency's reasonable interpretation); *Abington Crest Nursing & Rehab. Ctr. v. Sebelius*, 575 F.3d 717, 719 (D.C. Cir. 2009) (same). Further, section 8149 authorizes the Secretary to "prescribe rules and regulations necessary for [FECA's] administration and enforcement."

---

beneficiary or his designee the proceeds of such suit or settlement without first satisfying or assuring satisfaction of the interest of the United States. The amount refunded to the United States shall be credited to the Employees' Compensation Fund. If compensation has not been paid to the beneficiary, he shall credit the money or property on compensation payable to him by the United States for the same injury. However, the beneficiary is entitled to retain, as a minimum, at least one-fifth of the net amount of the money or other property remaining after the expenses of a suit or settlement have been deducted; and in addition to this minimum and at the time of distribution, an amount equivalent to a reasonable attorney's fee proportionate to the refund to the United States.

Labor regulations fill the gap as to joint recoveries. Specifically, 20 C.F.R. § 10.712 provides,

> (a) . . . . If a settlement or judgment is paid to or for more than one individual . . . , such as a joint payment to a husband and wife for personal injury and loss of consortium . . . , the gross recovery to be reported is the amount allocated to the injured employee. If a judge or jury specifies the percentage of a contested verdict attributable to each of several plaintiffs, OWCP or SOL will accept that division.

> (b) In any other case, where a judgment or settlement is paid to or on behalf of more than one individual, OWCP or SOL will determine the appropriate amount of the FECA beneficiary's gross recovery and advise the beneficiary of its determination. FECA beneficiaries may accept OWCP's or SOL's determination or demonstrate good cause for a different allocation. Whether to accept a specific allocation is at the discretion of SOL or OWCP.

Also, Labor's FECA Procedure Manual describes the allocation of joint proceeds between a loss of consortium claim and a personal injury claim. It provides that, "absent unusual circumstances, an allocation of a joint settlement or judgment to loss of consortium in an amount of 25% or less for the spouse . . . will be approved." FECA Procedure Manual Ch. 2-1100-9(c)(1)(b). It also permits a FECA beneficiary to show cause for a higher allocation. *Id.*

The Gonzalezes challenge Labor's demand that Rachel use the settlement proceeds to reimburse it for her FECA

compensation. Although they frame it several ways,[5] their primary argument is that the demand is improper because Richard, not Rachel, recovered in the settlement. Alternatively, they contend that, even if the Settlement Agreement entailed a joint recovery, it nonetheless allocated the proceeds entirely to Richard and Labor must respect that allocation instead of imposing its own. Next, they argue Labor should be estopped from seeking reimbursement because it did not take an active role in the Superior Court litigation. Finally, they argue Labor arbitrarily denied their lawyer recovery of certain litigation costs.

## A.  Joint Settlement

We start with the Gonzalezes' argument that theirs was not a joint settlement—an argument they base on the face of the Settlement Agreement. We interpret a settlement agreement under contract law. *T Street Dev., LLC v. Dereje & Dereje*, 586 F.3d 6, 11 (D.C. Cir. 2009). Hence, we aim to "give effect to the mutual intentions of the parties." *NRM Corp. v. Hercules, Inc.*, 758 F.2d 676, 681 (D.C. Cir. 1985). In the Settlement Agreement, Rachel and Richard agreed to "forever irrevocably and fully remise, release, acquit and discharge" the defendants from liability "[i]n exchange for" $625,000. Settlement Agreement ¶¶ 2-3; *see id.* at 1 (naming both Rachel and Richard as "Plaintiffs"). It is hard to imagine a clearer indication that the parties' mutual intent was to have *both spouses* release their respective claims against the defendants as consideration for

---

[5]Specifically, they say that Labor (1) misapplied FECA by requiring reimbursement from Richard; (2) unconstitutionally applied FECA to Richard; (3) violated the Fifth Amendment by requiring reimbursement from Richard; (4) impermissibly interpreted a non-beneficiary's, *i.e.*, Richard's, private settlement and (5) impermissibly "preempted" state law by limiting Richard's recovery for loss of consortium.

compensation. In other words, pursuant to the Settlement Agreement, Rachel and Richard jointly settled.

Paragraph 13 doesn't change things. It says, "Defendants understand that *Plaintiffs as between themselves* and in consultation with their attorneys have allocated the consideration paid under this agreement to Richard Gonzalez . . . ." Settlement Agreement ¶ 13 (emphasis added). It adds that this provision "is entirely the responsibility of Plaintiffs and their attorneys and shall not otherwise affect their promises contained herein." *Id.* Put simply, this paragraph does not affect the agreement between the Gonzalezes and the defendants. The defendants have still agreed to pay the Gonzalezes $625,000 in exchange for the Gonzalezes dismissing their claims. This paragraph merely reflects a decision by the Gonzalezes (and their lawyer) to channel Rachel's share of the settlement proceeds to Richard in a vain attempt to avoid reimbursing Labor for Rachel's workers' compensation benefits. Indeed, if Rachel were not entitled to settlement proceeds under the Agreement, she and Richard would not have anything to allocate "as between themselves."[6] *Id.*

---

[6]The Gonzalezes also assert that, through the Agreement, "Rachel gained nothing but the right to continue to pursue her claim for compensation against IDESA." Appellants' Br. 41-42. This is absurd. Rachel settled her claims against pre-sale IDESA (which was owned by ABM) in the Settlement Agreement. Settlement Agreement ¶ 3. Post-sale IDESA was not a party to the Agreement, having been dismissed from the litigation for lack of personal jurisdiction. Obviously, ABM and Amtech could not convey to Rachel the right to pursue her claim against post-sale IDESA as consideration for her releasing her claims against them. In reality, that Rachel did not settle her claims against post-sale IDESA in the Settlement Agreement is not even relevant; it in no way affects the fact that Rachel and Richard settled their claims against the defendants in exchange for $625,000.

12

In essence, the Gonzalezes want to argue that Rachel settled her claims with the defendants for no money or property but instead only to benefit her husband. That sounds like an interesting case. *See Lorenzetti*, 467 U.S. 173-74 (beneficiary not required to reimburse Labor unless she "received money or other property in satisfaction of [third-party] liability"); *Smith v. Mallick*, 514 F.3d 48, 52 (D.C. Cir. 2008) ("'[A] release, like any other contract, must be supported by sufficient consideration, and the consideration is not sufficient unless the releasor receives something of value to which he or she had no previous right.'" (quoting *Interdonato v. Interdonato*, 521 A.2d 1124, 1134 (D.C.1987))) (alteration in *Smith*). But that is not this case. In this case, the defendants paid the "Plaintiffs"—Rachel and Richard Gonzalez—$625,000 in exchange for "Plaintiffs" releasing their claims. This was a joint settlement.[7]

## B. Allocation

The Gonzalezes alternatively argue that, even if theirs was a joint recovery, Labor must adhere to the allocation of proceeds set forth in the Settlement Agreement, which provides that Richard should receive everything and Rachel nothing. They try to prop this argument up with 20 C.F.R. § 10.712(a), which states that, in the case of a joint settlement, the "recovery to be reported is the amount allocated to the injured employee." According to them, because the regulation is silent as to who

[7]Incredibly, the Gonzalezes also argue that this was not a joint settlement because "the settlement check" was made out to Richard and not Rachel. Appellants' Br. 27. But the only check in the record was *from the Gonzalezes' lawyer*, not from the defendants. The Settlement Agreement itself dictated that ABM and Amtech were to convey payment to the Gonzalezes "in the form of a check payable to the 'Escrow Account of Thompson, O'Donnell, Markham, Norton & Hannon.'" Settlement Agreement ¶ 1.

allocates, Labor must honor the allocation in the Settlement Agreement.

The problem with this argument is that 20 C.F.R. § 10.712 is not silent as to who allocates; it addresses that issue specifically and comprehensively. Subsection (a) provides, "If a judge or jury specifies the percentage of a contested verdict attributable to each of several plaintiffs," Labor applies that allocation. Subsection (b) provides, "In any other case, where a judgement is paid to or on behalf of more than one individual," Labor allocates the proceeds but also allows beneficiaries to show cause for adjustments to Labor's allocation. Because no judge or jury allocated the Gonzalezes' proceeds, this is an "other case," controlled by subsection (b). Thus, it was for Labor to determine how much of the Gonzalezes' settlement proceeds should be allocated to Richard's loss of consortium claim. Therefore, the Gonzalezes' attempt to unilaterally allocate the proceeds in their Settlement Agreement was without effect and their argument along this line fails.

Relatedly, the Gonzalezes argue that Labor "exceeded its statutory authority in determining that [Richard] could only retain 25% of the settlement" and that Labor arrived at that allocation "arbitrarily." Appellants' Br. 36. As explained above, however, FECA authorizes the Secretary of Labor to "decide all questions" relating to the FECA reimbursement scheme, 5 U.S.C. § 8145, and to "prescribe rules and regulations necessary for [its] administration and enforcement," *id.* § 8149. *See also Chevron*, 467 U.S. at 843; *Abington Crest*, 575 F.3d at 719. Labor regulations take up that call, explicating the allocation of joint recoveries. *See* 20 C.F.R. §§ 10.711-12. And Labor's FECA Procedure Manual indicates that, "absent unusual circumstances," the maximum Labor allocates to a loss of consortium claim is twenty-five per cent of the proceeds. Ch. 2-1100-9(c)(1)(b). In this case, Labor allocated the customary twenty-five per cent to Richard's claim. It also provided several

opportunities for Richard to submit evidence and argument justifying a higher allocation. He failed to do so. Thus, Labor's allocation was neither unauthorized nor arbitrary; it was by the book.

## C. Estoppel

The Gonzalezes also argue that, because Labor did not take an active role in the Superior Court litigation and settlement negotiations, it may not now assert its reimbursement rights. This argument clashes with 5 U.S.C. § 8131(a), which authorizes Labor to *either* require a FECA beneficiary to assign her right of action to the United States *or* require the beneficiary to "prosecute the action in h[er] own name." The Gonzalezes have shown no reason why Labor's right to reimbursement should disappear when it exercises the latter option. *Cf. Lorenzetti*, 467 U.S. at 175-76 (respondent failed to show "why [FECA] should be construed to diminish the scope of the United States' reimbursable interest when a third-party action is maintained by the employee himself"). Further, a requirement that Labor participate in litigation in order to preserve its reimbursement rights would be inconsistent with one of the purposes of FECA's reimbursement scheme, which is to "minimize the cost of the FECA program to the Federal Government." *Id.* at 177.

More troubling than the legal insufficiency of their estoppel argument, however, is that it is based on a misrepresentation of the underlying facts. In their opening brief, the Gonzalezes write that "Richard was not given 'fair warning' that should he settle his claim, DOL would assert rights to it." Appellants' Br. 40. According to them, "It was only after DOL realized that only Richard had settled that it swooped in and attempted to force the percentage it would allow him to keep of his settlement." *Id.* at 24. In reality, however, Labor made clear to the Gonzalezes' lawyer, *before the settlement*, that the scheme he was contemplating was not going to fly. On February 20,

2003 Hannon wrote to Labor to "request that any settlement obtained from [ABM and Amtech] be treated as a payment to Mr. Gonzalez for his loss of consortium claim." Letter from Hannon to Catherine P. Carter, Counsel, Labor, at 1. On February 28, 2003 a Labor lawyer rejected that approach. She explained, thoroughly, that Labor must approve any allocation of settlement proceeds to Richard's loss of consortium claim and that Labor's "longstanding general policy" was to allocate twenty-five per cent of a recovery to such a claim. E-mail from Catherine P. Carter, Counsel for Claims and Compensation, to Hannon (Feb. 28, 2003). Undeterred, the Gonzalezes (and their lawyer)[8] decided to go forward with their scheme and executed the Settlement Agreement. Now they say that Labor should be estopped from reimbursement because it did not warn them about how it would proceed and because it "was just as willing to accept the risk of Rachel's strategy as she was." Reply Br. 12. That is plainly not so.

## D. Costs

Finally, the Gonzalezes argue that Labor "arbitrarily" denied recovery of $8,970.55 in costs.[9] Appellants' Br. 52; Reply Br. 15. This argument relies on 5 U.S.C. § 8132 and 20 C.F.R. § 10.711, which allow a FECA beneficiary to deduct the costs of suit from settlement proceeds before reimbursing Labor.

---

[8]The Gonzalezes' lawyer's dogged pursuit of this plainly ineffectual strategy calls to mind Thoreau's observation that "[t]he lawyer's truth is not Truth, but consistency or a consistent expediency."

[9]Although the Gonzalezes also seem to challenge Labor's accounting of their attorney's fees in their opening brief, *see* Appellants' Br. 51-53, they subsequently abandon that challenge, *see* Reply Br. 15.

The sole record document the Gonzalezes cite on this issue is a letter from a Labor lawyer, stating,

> This office requires further explanation of the following costs, corp. research $1,500.00, information provider $151.00, and internet searches $1,500.00. Please provide this office with a detailed explanation of these costs. Please be advised that the in-house copying charge of $5,819.55 is denied.

Letter from Catherine P. Carter, Counsel for Claims and Compensation, to Hannon, at 2 (June 8, 2004).

Labor's denial of copying charges was based on its FECA Procedure Manual, which views such costs as "normal overhead costs of a firm" as opposed to litigation costs. Ch. 2-1100-9(h) ("Examples of costs which are not permitted are normal overhead costs of a firm, e.g., in-house record copying, secretarial or paralegal services, and co-counsel fees."). The denial was not arbitrary and we will not reverse it. As for the remaining costs in dispute, the Gonzalezes have not provided any information regarding their response to Labor's request for further information. Given this documentary void, we reject their argument for costs.

For the foregoing reasons, we affirm the district court's grant of summary judgment to Labor.

*So ordered.*