18-330-cr
*United States v. Gumaer*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 5th day of April, two thousand nineteen.

Present:
> ROBERT A. KATZMANN,
> *Chief Judge*,
> DEBRA ANN LIVINGSTON,
> CHRISTOPHER F. DRONEY,
> *Circuit Judges*.

———————————————————————

UNITED STATES OF AMERICA,

> *Appellee*,

> v.                                                               18-330-cr

MICHAEL GUMAER, AKA MICHAEL L. GUMAER,

> *Defendant-Appellant*.

———————————————————————

For Appellee:                           PAUL D. SILVER, Assistant United States Attorney (Miroslav Lovric, Assistant United States Attorney, *on the brief*), *for* Grant C. Jaquith, United States Attorney for the Northern District of New York, Albany, NY.

For Defendant-Appellant:                MELISSA A. TUOHEY, Assistant Federal Public Defender, *for* Lisa A. Peebles, Federal Public Defender, Syracuse, NY.

1

Appeal from a February 2, 2018 judgment of the United States District Court for the Northern District of New York (McAvoy, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

State prosecutors charged Michael Gumaer ("Gumaer") with two counts of predatory sexual assault against a minor. While Gumaer remained in state custody pending trial, federal agents filed a sealed criminal complaint charging him with two federal child pornography offenses. A federal prosecutor then secured Gumaer's attendance at the United States Attorney's Office ("USAO") for the Northern District of New York ("NDNY"). In a meeting with Gumaer and the attorney representing him in connection with the state charges, the federal prosecutor described the evidence and potential federal charges against Gumaer, and a state prosecutor offered Gumaer a plea deal that required, *inter alia*, his subsequent cooperation with federal agents. Gumaer accepted the state prosecutor's plea deal and then confessed his crimes to the federal agents in a subsequent interview. Following the interview and state court plea, federal prosecutors obtained an eight-count indictment against Gumaer. Gumaer moved in federal court to dismiss the indictment against him on the grounds that the federal government had violated his Fifth Amendment substantive due process rights and his Sixth Amendment right to counsel. The district court denied the motion, and a jury convicted Gumaer on all eight counts. Gumaer now appeals the denial of his motion to dismiss the indictment. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

2

## Background

### A.  Facts

#### 1.     The State and Federal Investigations

On August 28, 2016, state police received a report from a mother who claimed that she had found images and video on the cell phone of her twelve-year-old daughter ("V-1") depicting Gumaer and V-1 engaging in sexual intercourse and other sexual conduct.    Examination of V-1's phone and a subsequent interview with V-1 confirmed the mother's report.    On September 18, 2016, police arrested Gumaer and charged him with two counts of predatory sexual assault against a minor under New York state law.    On September 19, Gumaer was arraigned and remanded to a local jail.    Because Gumaer could not afford counsel, the state court appointed attorney Patrick Kilker to represent him on the state charges.

Four days later, the police contacted FBI Special Agent ("SA") Robert Lyons in connection with information provided by Gumaer's sister in Florida, who had alerted police that Gumaer had contacted her and told her that he was sending her two hard drives because they contained family pictures that he did not want police to seize.    Lyons commenced a federal investigation.    FBI agents secured search warrants to examine the hard drives.    The FBI's review of these hard drives revealed videos depicting V-1 masturbating Gumaer and Gumaer subjecting V-1 to oral sex.    In addition, one of the hard drives contained images of V-1's five-year-old sister ("V-2") with her legs spread open and Gumaer's hand on her vagina.

On October 13, 2016, federal prosecutors obtained a criminal complaint and federal arrest warrant from a magistrate judge.    The complaint charged Gumaer with one count of sexual exploitation of a child/production of child pornography in violation of 18 U.S.C. § 2251(a), and one count of possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B).    The

3

government requested that the complaint be filed under seal because public filing would "jeopardize an ongoing federal criminal investigation by revealing the existence of that investigation to potential targets and subjects of that investigation." Sp. App. 10. The magistrate judge granted the government's sealing request and the FBI lodged a copy of the arrest warrant as a detainer with the state facility where Gumaer was being held.

### 2. The Pre-Indictment Meetings with Gumaer

On November 29, 2016, an Assistant United States Attorney ("AUSA") sought and obtained a writ of habeas corpus *ad testificandum* authorizing Gumaer's removal from the state jail. Upon issuance of the writ, two FBI agents transported Gumaer to a meeting at the USAO in Binghamton.[1] Present at the meeting were the AUSA, a state district attorney, two FBI agents, and Gumaer's attorney, Kilker. The district court found that "[t]he purpose of the meeting was for the state and federal prosecutors to lay out for [the] defendant and his counsel the evidence each had against [the] defendant, for the state prosecutor to present a plea bargain deal on the state charges, for the federal prosecutor to provide an overview of possible dispositions in federal court, and for both prosecutors to seek [the] defendant's cooperation in identifying other possible child victims." Sp. App. 12.

At the start of the meeting, Kilker advised the group that the scope of his representation was limited to the state case, and that Gumaer would "probably" need a federal public defender to represent him on the federal charges. App. 212. The prosecutors and agents then gave Kilker

---

[1] Title 3 of the U.S. Attorney's Manual states that writs of habeas corpus *ad testificandum* must not be used to produce prisoners for examination by United States Attorneys or investigative agencies. Steven D. Clymer, Chief of the Criminal and Appeals Divisions for the USAO for the NDNY, confirmed in a letter to the magistrate judge that the AUSA had used the writ improperly and that measures were being undertaken to prevent future misuse of the writ in the NDNY. Supp. App. 1; *see also id.* at 2 ("I regret that this occurred and have taken steps to ensure that it does not happen again.").

4

and Gumaer an opportunity to meet in private. After the two had spoken in private, Kilker told the others that he and Gumaer were ready to proceed, and that Gumaer would seek to formally retain him on the federal charges.

The prosecutors then made their respective presentations. The state prosecutor outlined the state's evidence against Gumaer and presented the state's plea offer. In exchange for Gumaer pleading guilty to one count of rape in the first degree stemming from his contact with V-1, the state prosecutor explained, the state would recommend a sentence of 25 years in prison, 20 to 25 years of supervised release, and registration as a sex offender in the New York State Sex Offender Registry. The state's plea offer also required Gumaer to participate in an interview with the FBI.

The AUSA then outlined the federal government's evidence against Gumaer. The AUSA advised that the federal government could not make a plea offer until Gumaer was in federal custody and until the offer had received approval through an internal USAO plea offer approval process. Nevertheless, the AUSA informed Gumaer and Kilker that the "best possible case scenario" for a potential future plea offer would entail the following: (1) Gumaer would plead guilty to two counts of sexual exploitation of a minor/production of child pornography (one count per victim); (2) the government would seek the maximum sentence on each of the two counts; and (3) the government would seek to have each of the two federal sentences run consecutively to the state sentence and to each other. Sp. App. 13. The AUSA then reiterated that the federal government was not making a plea offer and that the USAO would likely seek additional charges with respect to the defendant's sexual exploitation of V-1 and V-2.

After these presentations, the prosecutors gave Gumaer and Kilker another opportunity to meet privately. After meeting with his client, Kilker informed the group that he had spoken with Gumaer and that Gumaer would accept the state's plea offer. After Kilker finished speaking,

5

Gumaer affirmed that he wanted to accept the state's plea offer, that he wanted the AUSA to begin the USAO's internal plea approval process, and that he would consent to be interviewed by the FBI in accordance with the state's plea deal.

On December 6, 2016, the FBI interviewed Gumaer. Present at the interview were two FBI agents (including SA Lyons), Kilker, and Gumaer. SA Lyons informed Gumaer that in addition to the state charges, there was a sealed federal complaint charging him with one count of production of child pornography and one count of possession of child pornography. SA Lyons told Gumaer that he would receive a copy of the sealed complaint once it was unsealed. After noting both sets of charges, SA Lyons stated that "it is our understanding that we are going to speak to you today about those charges" and that Gumaer had "indicated to us previously that you had no issue with that." Sp. App. 16. Gumaer responded: "I don't." Sp. App. 16. SA Lyons then advised Gumaer that he could consult privately with Kilker at any time during the interview. SA Lyons informed Gumaer of his *Miranda* rights, and Gumaer executed a form waiving those rights in Kilker's presence. SA Lyons then conducted a three-hour interview in which Gumaer admitted to much of the criminal conduct of which he had been accused.

On December 21, 2016, Gumaer appeared with his attorney in New York state court. The parties acknowledged the aforementioned plea agreement: Gumaer would plead guilty to rape in the first degree, and the state would recommend a 25-year sentence with 20 years of post-release supervision. After the state prosecutor informed the state court judge of the pending federal charges, the judge proceeded to question Gumaer about those charges. He asked whether Gumaer "had an adequate amount of time to discuss this whole situation with [his] attorney." Sp. App. 18. He asked whether Gumaer had been afforded the opportunity to discuss with his attorney "the evidence both the district attorney's office has and the U.S. attorney's office has in

6

connection with all of these matters against you." Sp. App. 19. And he asked Gumaer whether he had discussed with his attorney "not only the evidence that they have, but your relative chance of success or failure should you decide to take these matters to trial." Sp. App. 19. Gumaer responded in the affirmative to all three questions.

Following that colloquy, the state court judge confirmed with Gumaer that he understood the rights he was giving up by pleading guilty. The judge then accepted Gumaer's waiver of his right to a grand jury indictment, as well as his plea of guilty to rape in the first degree.

### B. Procedural History

On the day of Gumaer's guilty plea in state court, the USAO applied for and received a writ of habeas corpus *ad prosequendum* to have Gumaer produced before a federal magistrate judge. Gumaer's initial appearance took place on December 30, 2016, when the magistrate judge held a video conference with Gumaer, the AUSA, and an Assistant Federal Public Defender. Gumaer received copies of the since-unsealed criminal complaint and arrest warrant. The magistrate reviewed Gumaer's financial affidavit and appointed the Office of the Federal Public Defender ("OFPD") as counsel for Gumaer.

On January 11, 2017, a grand jury returned an indictment in the United States District Court for the Northern District of New York charging Gumaer with four counts of Sexual Exploitation of a Child, in violation of 18 U.S.C. §§ 2251(a) & (e); one count of Receipt of Child Pornography, in violation of 18 U.S.C. §§ 2252A(a)(2)(A) & (b)(1); one count of Transportation and Shipment of Child Pornography, in violation of 18 U.S.C. §§ 2252A(a)(1) & (b)(1); and two counts of Possession of Child Pornography, in violation of 18 U.S.C. §§ 2252A(a)(5)(B) & (b)(2).

On March 27, 2017, Gumaer moved to dismiss the indictment with prejudice based upon the USAO's alleged interference with his Fifth Amendment substantive due process rights and his

7

Sixth Amendment right to counsel. Gumaer alleged, in substance, that the USAO violated these provisions by "delaying the unsealing of the federal criminal complaint until after Gumaer cooperated with federal authorities and entered a guilty plea in state court to a related charge," thereby "prevent[ing] Gumaer from being assigned counsel on his federal case until December 30, 2016, after Gumaer had already waived his Fifth Amendment rights." App. 46.

The Honorable Thomas J. McAvoy, Senior United States District Judge, rejected these arguments and denied the motion. Following the denial of Gumaer's motion, the USAO rejected Gumaer's request to enter into a conditional plea agreement. Gumaer proceeded to trial on September 18, 2017. After a four-day jury trial, Gumaer was convicted on all eight counts. Judge McAvoy sentenced Gumaer to a term of 65 years' imprisonment, to run consecutively to Gumaer's state sentence of 25 years. Judgment was entered on February 2, 2018, and Gumaer appealed that same day.

## Discussion

On appeal, Gumaer challenges only the district court's denial of his pre-trial motion to dismiss the indictment. "We review a district court's decision denying a motion to dismiss an indictment *de novo*." *United States v. Yousef*, 327 F.3d 56, 137 (2d Cir. 2003).

### A. Fifth Amendment

Gumaer first argues that the USAO's application to seal the criminal complaint against him violated his Fifth Amendment substantive due process rights. This argument lacks merit. In broad terms, Gumaer asserts that the federal government violated his fundamental "right to fairness in a criminal proceeding." Appellant Br. 40. But in more concrete terms, Gumaer argues that by sealing the complaint against him and thereafter meeting with him and obtaining statements from him before he was presented in federal court on the federal complaint, the USAO delayed

8

the appointment of federal defense counsel until after Gumaer had crippled any potential future defense he might make to the federal charges. According to Gumaer, this conduct violated his substantive due process rights.

We disagree. Assuming without deciding that Gumaer's allegations could establish a substantive due process claim, the district court's factual findings refute the claim that the government conduct here was fundamentally unfair. With respect to the USAO's application to seal the complaint against Gumaer, the district court concluded that the USAO had a "justifiable basis to believe that further investigation would disclose more expansive criminal conduct," potentially involving other suspects, and that sealing of the complaint ultimately allowed "federal investigators . . . to pursue areas of investigation without unduly tipping their hand to the basis for their inquiries." Sp. App. 24. With respect to the November 29 meeting with Gumaer at the USAO, the district court found that "[t]he purpose of the meeting was for the state and federal prosecutors to lay out for [Gumaer] and his counsel the evidence each had against [Gumaer], for the state prosecutor to present a plea bargain deal on the state charges, for the federal prosecutor to provide an overview of possible dispositions in federal court, and for both prosecutors to seek [Gumaer]'s cooperation in identifying other possible child victims." Sp. App. 12. These findings belie the notion that the USAO engaged in conduct improperly geared toward delaying the appointment of federal counsel for Gumaer or otherwise prejudicing his "right to fairness in a criminal proceeding."

**B. Sixth Amendment**

Gumaer next argues that the federal government violated his Sixth Amendment right to counsel by delaying the appointment of his federal counsel until after he had confessed his crimes to the FBI and pled guilty to the state charges. Again, we disagree. The Sixth Amendment

9

provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. But in order to show a violation of the Sixth Amendment, Gumaer must establish that his Sixth Amendment right had "attached" at the time of its claimed violation. *See Rothgery v. Gillespie Cty., Tex.*, 554 U.S. 191, 215 (2008) (Alito, *J.*, concurring) ("[Attachment] mean[s] nothing more than that a criminal prosecution has begun.") (internal quotation marks and alterations omitted). Attachment of the Sixth Amendment right to counsel occurs "only when formal judicial proceedings are initiated against an individual by way of indictment, information, arraignment, or preliminary hearing." *United States v. Gouveia*, 467 U.S. 179, 180 (1984). In other words, absent the filing of a formal charging instrument, the right to counsel attaches "at the first appearance [by the accused] before a judicial officer at which a defendant is told of the formal accusation against him and restrictions are imposed on his liberty." *Rothgery*, 554 U.S. at 194 (majority opinion).

Gumaer claims that the government violated his right to counsel by conducting the November 29 meeting at the USAO and the December 6 interview with the FBI prior to the appointment of Gumaer's federal counsel. But both of those events occurred before the federal government had initiated "formal judicial proceedings" against Gumaer "by way of indictment, information, arraignment, or preliminary hearing." *Gouveia*, 467 U.S. at 186. Gumaer points to federal agents' filing of a criminal complaint and arrest warrant with the jail where Gumaer was being held. But as we held in *United States v. Moore*, 670 F.3d 222 (2012), "[a]bsent a formal charge, arrest on a warrant, even one issued pursuant to a criminal complaint sworn out by prosecutors, is insufficient [to trigger Sixth Amendment protections] prior to the initial appearance before a judicial officer." *Id.* at 234. Because Gumaer had not been formally charged or made his initial appearance before a judicial officer by the time of the November 29 or December 6

10

meetings, Gumaer's Sixth Amendment right to counsel had not yet attached at the time of those events.[2]

Gumaer attempts to circumvent the fact that his Sixth Amendment right had not yet attached by relying on *United States v. Stein*, 541 F.3d 130 (2d Cir. 2008), for the proposition that "[w]hen the government acts prior to indictment so as to impair the suspect's relationship with counsel post-indictment, the pre-indictment actions ripen into cognizable Sixth Amendment deprivations upon indictment." *Id.* at 153. But *Stein* is readily distinguishable from Gumaer's case. In *Stein*, the government interfered with the defendants' Sixth Amendment right to counsel by pressuring KPMG, the defendants' employer, to abandon its preexisting policy of advancing legal fees to employees who incurred liability out of their activities at the firm. *Id.* at 137. The pressure that the government applied to KPMG violated the Sixth Amendment because some of the *Stein* defendants "were unable to retain the counsel of their choosing as a result of the termination of fee advancements upon indictment," while other defendants were "caused . . . to restrict the activities of their counsel, and thus to limit the scope of their pre-trial investigation and preparation." *Id.* at 157 (internal quotation marks omitted).

This case presents none of the singular facts presented in *Stein*. Here, the federal government did not interfere in any way with Gumaer's ability to obtain and fund the counsel of his choice after indictment. *See Medunjanin*, 752 F.3d at 590 (rejecting a similar Sixth Amendment claim, based on analogy to *Stein*, because "Medunjanin was not denied his choice of counsel"). On the contrary, at Gumaer's initial appearance on December 30 (and in light of Gumaer's indigency), the magistrate judge appointed an OFPD attorney to represent Gumaer—

---

[2] Gumaer does not raise a challenge to the admissibility of his inculpatory statements during the December 6 interview, which were made only after *Miranda* warnings had been given and he had executed a waiver.

the very same counsel that would have been appointed regardless whether he had any contact with federal agents prior to his court appearance.  As the district court found, the government obtained sealing of the criminal complaint and the arrest warrant in this matter and thereafter met with Gumaer in the preindictment period in furtherance of its ongoing investigation, which sought, *inter alia*, to identify other suspects and other potential victims.  Nothing in the Sixth Amendment prohibited this investigation, nor did the government's activities in this regard prevent the OFPD from representing Gumaer once he was formally charged.  In short, *Stein* does not support Gumaer's Sixth Amendment claim because the government's conduct here in no way impaired Gumaer's right to counsel after a formal charge had been lodged.

*     *     *

We have considered all of Gumaer's remaining arguments and find them to be without merit.  Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk